SANDRA YVONNE EVANS JAMISON, Adm'rx, of the Estate of John Jamison, Deceased, Plaintiff-Respondent-Appellee, *v.* THE CITY OF CHICAGO *et al.,* Defendants-Petitioners-Appellants.

(No. 58916; ▮▮▮▮▮▮▮

First District (4th Division)—December 20, 1974.

*Rehearing denied January 29, 1975.*

BURMAN, J., specially concurring.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Harvey N. Levin, Assistant Corporation Counsel, of counsel), for appellants.

Cummings & Wyman, of Chicago (Stanley M. Cahn, of counsel), for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The plaintiff-respondent-appellee (hereinafter plaintiff) brought suit against the City of Chicago and the individual defendants, police officers of the City of Chicago, for the wrongful death of her intestate, John Jamison. The plaintiff's complaint was filed on December 11, 1972, and on January 22, 1973, the defendants-petitioners-appellants (hereinafter defendants) made a motion to strike and dismiss the complaint. The basis for the motion was section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch.

85, par. 4—102). On March 6, 1973, after hearing counsels' arguments, the trial court denied the motion to strike and dismiss the complaint. The defendants on April 3, 1973, presented a motion to the trial court and requested the court to certify the question of the denial of the defendants' motion to strike and dismiss the complaint pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1971, ch. 110A, par. 308). The trial court granted the motion, finding that its denial of the defendants' motion to strike and dismiss the complaint involved a question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. The defendants filed a petition for leave to appeal and we granted the petition on May 30, 1973.

The plaintiff's complaint alleged that on or about January 1, 1972, plaintiff's decedent, John Jamison, was at Dunn's Pizzeria and that he was shot dead without any cause or provocation by one James O'Malley. The complaint further alleged that on December 29, 30, and 31, 1971, defendants McCurrie, Weaver, Katalinich and "Unknown Persons" were guilty of willful and wanton negligence because on numerous occasions during this period the individual defendants were repeatedly requested to arrest James O'Malley by one or more of O'Malley's sons and other persons who complained of the highly irrational and criminal behavior of O'Malley during this period, including assault and battery and assault with a deadly weapon upon one or more of O'Malley's sons, and notwithstanding these requests defendants "in willful and wanton disregard for their duties as law enforcement officers of the City of Chicago, and in willful and wanton disregard of their duty and obligation as such law enforcement officers to protect the safety and well-being of plaintiff's decedent, as a member of the public, did during said period willfully and wantonly decline and refuse to arrest said James O'Malley, without any lawful justification whatsoever for their refusal to do so." An amendment to the complaint also alleged that prior to and at the time of the refusals to act, one or more of the individual defendants knew from prior experience of "the dangerous, violent, and law violating propensities of said James O'Malley." It was alleged that the plaintiff's intestate's death was the direct and proximate result of the willful and wanton negligence of the defendants. As previously stated, the defendants' motion to strike and dismiss the plaintiff's complaint was based on section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act. Defendants maintain that by virtue of this section of the Act neither public entities nor policemen are liable for failure to supply police protection. Plaintiff takes a contrary position and bases her contention on section 2—202 of the Illinois Tort Immunity Act. (Ill. Rev. Stat. 1971,

ch. 85, par. 2—202.) However, due to the manner in which we view this case, it is unnecessary to deal with this issue.

The allegations and accusations within the plaintiff's complaint are stated in a broad and general manner. The complaint does not allege any specific acts or omissions by the defendants. During the course of oral argument, plaintiff's counsel made several factual allegations that were not contained within the complaint. Counsel stated that Daniel O'Malley, one of James O'Malley's sons, had pleaded several times during the 3-day period in question with the individual defendants who were policemen assigned to the 8th District to arrest his father because he was brandishing a gun, threatening blacks, and had pushed his crippled son out of a wheelchair. Plaintiff's attorney maintained that this constituted an assertion of the commission of an offense by a citizen and that the police had the power to arrest James O'Malley without a warrant. While this may be true, none of these factual allegations are found in the complaint. In addition, counsel asserted that James O'Malley had been committed to a State institution prior to murdering plaintiff's intestate and that the police knew this and had in fact dealt with James O'Malley themselves. Counsel was questioned on this point and admitted that this was not spelled out in the complaint.

■■ As was stated in *Jarvis v. Herrin City Park District,* 6 Ill.App.3d 516, 524, 285 N.E.2d 564, 570 (1972): "It is well settled in Illinois that, in order to withstand a motion to dismiss, a complaint must contain sufficient averments of *fact* to state a cause of action. (*Stenwall v. Bergstrom* (1947), 398 Ill. 377, 75 N.E.2d 864.)" We are of the opinion that on the basis of the few facts alleged in the plaintiff's complaint there is not a sufficient allegation of willful and wanton negligence. This court is aware of the fact that pleadings should be liberally construed (Ill. Rev. Stat. 1971, ch. 110, par. 33). However, substantial averments of fact remain essential to stating a cause of action. The trial court, therefore, erred in not granting the defendants' motion to strike and dismiss the plaintiff's complaint.

For the reasons herein stated, the order of the Circuit Court of Cook County is reversed.

Reversed.

DIERINGER, J., concurs.

Mr. JUSTICE BURMAN, specially concurring:

I agree with the judgment of my brethren, but for a different reason. I find merit in the defendants' contention that the trial court erred in failing to grant their motion to strike and dismiss the cause of action

because the Illinois Local Governmental and Governmental Employees Tort Immunity Act specifically exempts defendants under the facts specified in the complaint.

Section 4—102 of that Act (Ill. Rev. Stat. 1971, ch. 85, par. 4—102), under "Article IV—Police and Correctional Activities," provides:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, *failure to prevent the commission of crimes and failure to apprehend criminals.*" (Emphasis added.)

In addition, section 4—107 of the Act (Ill. Rev. Stat. 1971, ch. 85, par. 4—107), also under article IV, unequivocally provides:

> "Neither a local public entity nor a public employee is liable for an injury caused by the *failure to make an arrest* or by releasing a person in custody." (Emphasis added.)

Under the clear import of the language of these sections, the defendants here could not be held liable for failing to effect the arrest of James O'Malley.

The allegation of "wilful and wanton negligence" appearing in the plaintiff's amended complaint is derived from section 2—202 of the same Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 2—202), which sets the general standard for liability of a public employee in Illinois for acts or omissions "in the execution or enforcement of any law." It provides:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence."

Plaintiff claims that the defendants alleged failure to enforce the law and effect the arrest of O'Malley exposes them to liability, under section 2—202, if that failure amounts to "willful and wanton negligence," despite the mandate of section 4—102.[1] Plaintiff asserts that the sections "must be read together" and concludes that section 2—202 is a limitation on the immunity granted in section 4—102. I disagree.

Section 2—202 comes under "Article II—General Provisions Relating to Immunity" and is clearly general in nature. It generally limits the liability of any public employee for any "act or omission in the execution or enforcement of any law" to "willful and wanton negligence." Sections 4—102 and 4—107, on the other hand, appear later in the same Act under "Article IV—Police and Correctional Activities," and are specific and

---

[1] Neither party discusses the applicability of section 4—107. I will consider plaintiff's argument in regard to section 4—102 to apply also to section 4—107.

categorical in nature. These sections are clearly intended to relate to the function of the police, and specify certain situations where a failure to act will not result in a local public entity's or a public employee's liability. Section 4—107 also provides immunity for the active conduct of releasing a prisoner. These specific sections are, in my opinion, meant to limit the application of section 2—202, and are not meant to be limited by it.

Other specific sections of the Act are intended to be construed likewise. For example, article V is concerned with "Fire Protection," and section 5—102 thereunder, provides:

> "Neither a local public entity that has undertaken to provide fire protection service nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." (Ill. Rev. Stat. 1971, ch. 85, par. 5—102.)

The statutory framework clearly supports the notion that the legislature intended, by subsequent specific sections in articles IV and V, such as 4—102, 4—107, and 5—102, to limit the effect of section 2—202 specifically in relation to police and fire protection. When one considers the great amount of complaints made daily by persons for protective reasons it can easily be understood why the legislature, in its wisdom, would provide the immunity to police as contained in section 4—102 and 4—107 or otherwise municipalities would be exposed to limitless liabilities.

Both parties agree that probably the most extensive and comprehensive analysis of the Immunity Act is an article by David C. Baum appearing in 1966 U. Ill. L. F. 981, entitled "Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act." Professor Baum's analysis supports my conclusion. In discussing whether an action based on "malice" should be maintainable under section 2—201, providing general immunity for discretionary acts of public employes, he concludes in the affirmative, but then states:

> "It should be noted, however, that malicious acts will not be actionable if they fall within specific immunities granted by sections of the Immunity Act other than section 2—201. Many of these sections are categorical in their language and appear to leave no room for exceptions, even where good faith is lacking." (1966 U. Ill. L. F. 981, 1004.)

Sections 4—102 and 4—107 are clearly sections granting specific immunities. If such sections preclude an action based on "malice" under the general provisions of section 2—201, as Professor Baum states, they must also do so in regard to section 2—202, whether the action is based on "malice" or "willful and wanton negligence."

Plaintiff contends that the construction of the Act which I adopt would "nullify and sweep away" section 2—202 and render it a "meaningless nullity." This is manifestly not the case. I can certainly conceive of liability under section 2—202 for the acts or omissions of various public employees, other than police officers, in the execution and enforcement of various laws (*e.g.*, other than criminal laws) which is not precluded by the specific mandates of sections 4—102 and 4—107. And of course, as plaintiff contends, section 2—202 might well apply to the conduct of police in certain situations not limited by article IV, *e.g.*, shooting an innocent person while effecting the arrest of another as a result of "willful and wanton negligence." As such, it is not apparent how the construction adopted renders section 2—202 a "meaningless nullity." In fact, it is rather difficult to perceive what purpose sections 4—102 and 4—107 would serve if plaintiff's construction was intended. Plaintiff appears to read these latter sections as granting immunity in certain specific circumstances relating to law enforcement, but only for ordinary negligence, whereas section 2—202 has already provided for that same immunity in more general terms.

The plaintiff contends that the construction adopted is at odds with *Arnolt v. City of Highland Park*, 52 Ill.2d 27, 282 N.E.2d 144. That is not so. In *Arnolt* the complaint alleged that the plaintiff sustained injuries while riding in a car which collided with a police vehicle. No question regarding the failure of the police to prevent the commission of a crime or to effect an arrest was involved in that case, unlike in the case at bar. Thus, under the facts in *Arnolt*, there was no reason to consider sections 4—102 or 4—107, which were not raised as a defense. Furthermore, in so far as *Arnolt* implies that section 2—202 is applicable to police conduct, it is not inconsistent with the construction of the Immunity Act adopted in this concurring opinion. As indicated above, I agree that section 2—202 might well apply to police conduct, but only to the extent that such conduct is not immunized by other sections of the Immunity Act, such as sections 4—102 and 4—107.

It should finally be noted that even under case law prior to the applicability of the Tort Immunity Act, a municipality was not held liable for failing to prevent others from committing crime. (*Keane v. City of Chicago*, 98 Ill.App.2d 460, 240 N.E.2d 321; *Adamczyk v. Zambelli*, 25 Ill.App.2d 121, 166 N.E.2d 93; see also *Huey v. Town of Cicero*, 41 Ill.2d 361, 243 N.E.2d 214, where it was stated that independent of present statutory concepts of sovereign immunity, a municipality or its employees is generally not liable for failure to supply general police or fire protection.) An exception to the general rule was recognized, however, where a special duty was owed by the police to the victim of a crime. In

332

*Gardner v. Village of Chicago Ridge,* 71 Ill.App.2d 373, 219 N.E.2d 147, for example, the dismissal of a complaint was reversed. There the facts alleged were that the plaintiff was beaten by four individuals while supervising a teen club dance. The police later apprehended four suspects on the highway and held them in custody while one police officer returned to the dance hall to request the plaintiff to accompany him and identify them. When the plaintiff arrived, the police allegedly allowed the four suspects to remain in close proximity to him. As a result, the suspects attacked him in the presence of the officers, whereby he sustained severe injuries. The appellate court stated that, although generally a municipality is not liable for failure to prevent the tortious or unlawful acts of others (citing *Adamczyk v. Zambelli,* 25 Ill.App.2d 121, 166 N.E.2d 93), under the alleged circumstances set out above the police owed a duty to the plaintiff to exercise reasonable care for his safety. No such duty existed in the case at bar. On this basis, however, if it were determined that the legislative intent behind sections 4—102 and 4—107 was to codify this previous case law, there might be justification for construing the Immunity Act differently in a situation where, unlike the situation here, the police had personally witnessed an assault and, with ample opportuinty to do so, failed to protect persons threatened, resulting in their injury.

In view of my construction of the Immunity Act under the facts of this case, I would also reverse the judgment of the circuit court.