RAYMOND C. TREPACHKO, Special Adm'r of the Estate of Carla Trepachko, Deceased, Plaintiff-Appellant, v. THE VILLAGE OF WESTHAVEN, *et al.*, Defendants-Appellees.—BRUNO PIETRUSZYNSKI, Adm'r of the Estate of Richard Pietruszynski, Deceased, Plaintiff-Appellant, v. THE VILLAGE OF WESTHAVEN *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—87—1324, 1—87—1440 cons.

Opinion filed February 23, 1989.—Rehearing denied July 11, 1989.

JIGANTI, P.J., dissenting.

Walsh, Neville, Pappas & Mahoney and Corboy & Demetrio, P.C., both of Chicago (Anne B. Kokoris, Philip H. Corboy, Thomas A. Demetrio, Todd A. Smith, and David A. Novoselsky, of counsel), for appellants.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge and Elizabeth A. Brown, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:
This is a consolidated appeal from the dismissal of plaintiffs' third-amended complaints in a personal injury and wrongful death action.

BACKGROUND
Plaintiffs, Raymond Trepachko and Bruno Pietruszynski, administrators of the estates of Carla Trepachko and Richard Pietruszynski

(decedents), respectively, filed separate complaints against defendants, the Village of Westhaven (Village), Westhaven police officer Harry Callahan (Callahan), and Jerome Ranos (Ranos), seeking recovery for the fatal injuries suffered by Carla and Richard when the motorcycle on which they were riding collided with Ranos' automobile on LaGrange Road in Westhaven.

The facts, as alleged in both plaintiffs' third-amended complaints and admitted by defendants by reason of their motions to dismiss (see *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015), are as follows. At approximately 1 a.m. on August 12, 1984, Ranos, who had been driving northbound on LaGrange Road, was stopped by Officer Callahan for a traffic law violation. Ranos stopped his car in the right curb lane, and Officer Callahan positioned his vehicle directly behind Ranos' automobile. Callahan focused his spotlight on the driver's area of the Ranos car and instructed Ranos to move the car from the lane in which it was parked to the median which divided the northbound lanes from the southbound lanes in the four-lane highway. Ranos drove his car in a westerly direction across the highway toward the median in such a way that it was proceeding almost perpendicularly across the two north-bound lanes. While Ranos moved his car across the highway, Officer Callahan continued to shine his spotlight toward Ranos' rear-view mirror. As the Ranos car proceeded across the highway, the motorcycle on which the decedents were riding collided with it, causing them the severe injuries from which they subsequently died.

The Trepachko complaint alleged that Callahan was negligent in the following respects: directing Ranos to drive his car across two lanes of travel; failing to keep a proper lookout for or take measures to control oncoming traffic; and focusing his spotlight in Ranos' rear view mirror in such a way as to make it difficult or impossible for Ranos to see any traffic approaching from the south. The Pietruszynski complaint alleged these same acts and omissions, and also alleged that Officer Callahan's failure to warn oncoming cars of the maneuver Ranos was performing at Callahan's direction constituted both negligent and wilful and wanton conduct.

Defendants filed motions to strike and dismiss the complaints, asserting that they owed no duty to protect the decedents from Ranos; that Callahan's conduct was not the proximate cause of the decedents' injuries; and that they were immune from liability under sections 2—202 and 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—202, 2—109) (the Tort Immunity Act)).

Following a hearing, the trial court granted the motions to dismiss. The court found that plaintiffs had failed to plead or establish the existence of a special relationship between defendants and the decedents giving rise to a duty on the part of defendants to the decedents. The court then held, as a matter of law, that absent any such duty, plaintiffs' complaints failed to state a cause of action. The action against Ranos remained pending and is not the subject of this appeal. This appeal from the dismissal of the complaints against the Village and Callahan followed.

We affirm, finding that plaintiffs' complaints do not allege facts which meet the requirements of the "special duty" exception to the general rule of immunity of municipalities and police officers for acts of ordinary negligence; and that by reason of defendants' immunity from liability, dismissal was proper.

OPINION

Plaintiffs contend that their complaints were erroneously dismissed because the trial court "fundamentally misunderstood" their theory of recovery. Plaintiffs argue that the trial court erred when it "failed to recognize that the duty to provide police protection to the general public is a completely separate and distinct duty than is the duty to exercise ordinary care to guard against the consequences of one's own negligent conduct."

■ It is well established in Illinois that, generally, municipalities are not liable for the failure to provide police protection. (*Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.) The rationale behind this rule is that a police department's duty to preserve the well-being of the community and protect its citizenry is a duty which is owed to the public at large, rather than specific individuals. (*Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960.) The rule is based upon strong public policy considerations. If a municipality's duty to provide police protection extended to individuals, rather than to the public at large, police departments may be placed in the untenable position of guaranteeing the personal safety of each individual in the community. The general rule which confers immunity upon municipalities and their agents for failure to provide adequate police protection was codified in section 4—102 of the Tort Immunity Act, which provides, "[n]either a public entity nor a public employee is liable for *** failure to *** provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service." Ill. Rev.

Stat. 1985, ch. 85, par. 4—102.

■ An exception to the general rule has been created where the police have assumed a special duty to a person "that elevates his status to something more than a member of the general public." (*Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1065, 467 N.E.2d 1153.) This "special duty" exception to the general immunity of municipalities arises only where four criteria are met: (1) the police are uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there are allegations of specific acts or omissions on the part of the police; (3) those acts or omissions are either affirmative or wilful in nature; and (4) the injury occurs while the plaintiff is under the direct and immediate control of the police. *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 517 N.E.2d 656; *Rush v. City of Chicago* (1987), 163 Ill. App. 3d 725, 517 N.E.2d 17; *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153.

Plaintiffs maintain, however, that the instant case is not a "police protection case" based on Officer Callahan's failure to protect the decedents from the negligent acts of a third party, *i.e.*, Ranos. Rather, they argue, theirs is an action in simple negligence based on Officer Callahan's negligent breach of every citizen's duty to exercise ordinary care for the safety of others. Plaintiffs argue that their complaints adequately allege that at the time of the occurrence, Officer Callahan was acting in the performance of his duties as a police officer of the Village; that he owed a duty to exercise ordinary care for the safety of the decedents in carrying out those responsibilities (*Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423); that he breached that duty by the various affirmative, negligent acts enumerated in the complaints; and that these acts created the hazardous condition which proximately caused the decedents' injuries and subsequent deaths. In the alternative, they argue that, assuming the trial court was correct in assessing the sufficiency of the complaints under a "special duty" analysis, the facts alleged in the complaints met the four criteria within the exception to the general immunity of a municipality.

Plaintiffs characterize the allegations of negligence in their complaints as "affirmative acts" on the part of Officer Callahan. A substantive analysis of the complaints, however, supports the trial court's conclusion that the facts alleged constitute allegations of the

failure of a police officer to adequately protect members of the general public in the exercise of the officer's duties relating to traffic control. Specifically, the complaints allege, *inter alia*, that Officer Callahan: "failed to properly direct and control Ranos; failed to take measures to adequately control oncoming traffic *** moving at a speed of 55 miles per hour; failed to take any measures to *protect* oncoming traffic *** moving at a speed of 55 miles per hour; failed to keep proper and sufficient lookout for oncoming traffic *** moving at 55 miles per hour; and failed to warn any oncoming traffic of the lane usage that was being effected at their order, direction and control." (Emphasis added.) These allegations expressly or implicity charge Officer Callahan with failing to perform various acts and take certain precautions to protect the safety of "oncoming traffic." In the context of the complaints before us, the term "oncoming traffic" refers specifically to the decedents. The gist of the complaint, then, is that Officer Callahan failed to take measures to protect the safety of the decedents. The only "affirmative act" alleged in the complaints was that Officer Callahan focused his spotlight toward the rearview mirror of Ranos' vehicle as it crossed the highway. We do not believe that this single factual allegation, or the conclusion drawn from it in the complaints, *i.e.*, that Callahan knew "that the spotlight would make it difficult or impossible for Ranos to look to the south for any oncoming traffic," changes the essential nature of the action as one alleging that Officer Callahan improperly performed the traffic stop of Ranos without due regard for the safety of the decedents.

Plaintiffs' insistence that this is not a "police protection" case is refuted by the substance of their allegations and is based on an overly narrow interpretation of the concept of "police protection." We therefore find no "misinterpretation" by the trial court in its determination that plaintiffs' complaints attempted to state a cause of action against defendants for Callahan's failure to perform his police duties in a manner protective of the decedents' safety. As stated, liability for such a failure requires, in the first instance, a showing that defendants owed a special duty to the decedents. *Cf. Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 457 N.E.2d 1153 (allegations that a deputy sheriff negligently failed to direct motorists at the scene of an accident to remove their vehicles from the highway, to light flares or to warn oncoming motorists of the presence of those vehicles on the roadway required a showing that the county defendants owed plaintiffs a special duty to provide adequate police protection or service).

Plaintiffs argue and we agree, as a general proposition, that

police officers, like all other citizens, have the duty to exercise ordinary care with respect to their conduct toward others. The existence of this duty was implicitly recognized by the supreme court in *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 282 N.E.2d 144, in its analysis of the scope of immunity afforded public employees and municipalities under sections 2—109 and 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—109, 2—202), which we discuss later in this opinion. In *Arnolt*, the court rejected the argument that immunity is afforded for *every* act or omission by public employees during their hours of duty. The court stated, by way of example, that a police officer may be found liable for injuries or damages resulting from his negligence while merely cruising on routine patrol.

■ However, plaintiffs have not cited nor have we found any cases espousing the proposition they proffer—which is, in essence, the opposite of the argument made in *Arnolt*—that a police officer "is not rendered immune from liability [for injuries to individuals resulting from acts of ordinary negligence] simply because he was acting in the performance of his duties at the time of the accident." Indeed, there is a continually growing line of jurisprudence finding that police officers *are* immunized from liability for acts of ordinary negligence committed when they are providing police services (*e.g., Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153; *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610) or executing, enforcing or implementing any law (*e.g., Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292; *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274).

Plaintiffs' reliance on *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423, as support for the proposition that a police officer "is liable for any injury caused by his own ordinary negligence" is misplaced. In *Brooks*, the decedent came upon the scene of a roadblock set up to apprehend Lundeen and was instructed by the police officers to park his car on the shoulder of the road. Brooks was killed when Lundeen's car, travelling at approximately 90 miles per hour, veered around the squad car and collided head on with his vehicle. The jury verdict entered for plaintiff was upheld on appeal. The *Brooks* court based its decision upon the existence of an affirmative duty to warn which it found to arise out of the special relationship created when the police initiated control over Brooks by directing him, without explanation, to park his vehicle within the roadblock area. The court held that by detaining Brooks at the scene, the police affirmatively assumed a duty to him to warn him of the danger known to them or to direct him to a safe position. Since *Brooks* in-

volved a special relationship between the police and the decedent, we do not find it to be supportive of the theory propounded by plaintiffs in this case. Neither, however, do we find *Brooks* to be inconsistent with the authorities we have cited holding that absent a special relationship with the injured person, police are generally immune from liability for acts of ordinary negligence while in the active performance of police functions.

■ We turn then to plaintiffs' assertion that the existence of such a duty, though not expressly pleaded, is nevertheless inferentially established by the facts alleged in the complaints. As stated earlier, the special duty exception applies only where all four of its requirements are met. Here, even assuming, in lieu of an exhaustive analysis, that plaintiffs' complaints contain some facts which may arguably satisfy the first three requirements, the absence of any allegations stating, or from which it reasonably could be inferred, that the *decedents* were under the direct and immediate control of Officer Callahan when their motorcycle struck Ranos' vehicle renders the exception inapplicable to the situation before us. (See, *e.g., Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153 (motorists injured when their automobile collided with another vehicle at the scene of a prior accident scene were not under the direct and immediate control of the deputy sheriff also present at the accident scene so as to trigger the special duty exception).) This fourth requirement has been given a literal and strict interpretation by Illinois courts, which have consistently limited its applicability to plaintiffs or, as in this case, their decedents. (See *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Luber v. City of Highland* (1986), 151 Ill. App. 3d 758, 502 N.E.2d 1243; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.) Whether or not Ranos, a defendant, was under the direct and immediate control of Officer Callahan, as plaintiffs extensively argue, is not relevant to a discussion of the special duty exception.

■ Although the question of what, if any, duty was owed to the decedents was the primary focus of the hearing in the trial court, the record reveals that in their amended motions to dismiss, the defendants also asserted that they were immune from liability by reason of sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—202, 2—109), which provide, respectively:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence."

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

Sections 2—202 and 2—109 are general immunity provisions which relate to any public employee enforcing any law. These sections codify the long-standing, common-law rule that municipalities and employees or agents thereof are not liable for injuries resulting from acts of ordinary negligence by those employees-agents in the performance of governmental functions (see, *e.g., Mower v. Williams* (1949), 402 Ill. 486, 84 N.E.2d 435; *Taylor v. City of Berwyn* (1939), 372 Ill. 124, 22 N.E.2d 930). These sections are more broad than but similar to section 4—102, which specifically confers immunity on police officers.

There is no dispute that the incident giving rise to this litigation occurred while Officer Callahan was executing and enforcing traffic laws. (See *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292.) Indeed, plaintiffs acknowledge that fact in arguing, *inter alia*, that "a police officer engaged in a governmental function while pursuing a traffic violator is not rendered immune from liability for ordinary negligence while acting in the performance of his duties [but, rather] owes a duty to exercise ordinary care for the safety of others in carrying out his responsibilities" (Trepachko brief); and that the courts in the cases cited by plaintiffs "refused to distinguish a police officer enforcing the law as being immune from [such a duty] or subject to any lower standard of care" (Pietruszynski brief).

■ However, as the supreme court in *Fitzpatrick* held, section 2—202 applies to officers engaged in the execution and enforcement of traffic laws and, together with section 2—109, shields both the officer and the municipality from liability for injuries resulting from acts of ordinary negligence. Thus, in order to recover for injuries which occur during the execution or enforcement of a law by a public employee, plaintiffs must allege facts amounting to wilful and wanton negligence. See also *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 517 N.E.2d 656; *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64; *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88; *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 13.

■ In this case, the Trepachko complaint alleges only ordinary negligence by Officer Callahan while he was engaged in the enforcement of traffic laws. Consequently, even if we were to accept plaintiffs' contention that this is not a "police protection case," defendants are immune from liability for acts of ordinary negligence by

reason of sections 2—202 and 2—109. Absent a basis for recovery, dismissal of the complaint was proper.

In contrast, the Pietruszynski complaint did contain a count alleging wilful and wanton misconduct. Whether conduct amounts to wilful and wanton negligence ordinarily is a question of fact for the trier of fact. (*Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 436 N.E.2d 623.) However, it is also well settled that to withstand a motion to dismiss, a complaint must allege facts sufficient to state a cause of action, a determination of which may be made by the court as a matter of law. (*Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 501 N.E.2d 995; *Jamison v. City of Chicago* (1975), 25 Ill. App. 3d 326, 323 N.E.2d 118 (insufficient facts to establish wilful and wanton misconduct warrant dismissal of counts based thereon).) We note that the allegations in the wilful and wanton count of the Pietruszynski complaint are nothing more than repetitions of the allegations in the count sounding in ordinary negligence and are also substantively identical to the allegations of the Trepachko complaint. Moreover, in his brief and in arguments before the trial court and this court, Pietruszynski has stated that his action is one "sounding in simple negligence"; that the "conduct of the defendant must be scrutinized to determine if a general duty to refrain from acts of simple negligence [was] owed to the [decedent]"; that the issue presented is whether "[Officer Callahan's] own ordinary negligence proximately caused the injuries." We conclude that Pietruszynski failed to sufficiently plead facts constituting wilful and wanton misconduct, which is generally defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others" (Ill. Rev. Stat., 1986 Supp., ch. 85, par. 1—210; *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64).

In summary, we find that the trial court correctly determined that plaintiffs' complaints sought to hold defendants liable for Officer Callahan's failure to discharge his police duties in a manner providing adequate protection to decedents, and that absent a showing by plaintiffs that there was a special relationship giving rise to such a duty, their complaints had failed to state a cause of action. We are also of the opinion that based on sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—202, 2—109), which confer general immunity to municipalities and public employees from liability for acts and omissions of ordinary negligence in the execution and enforcement of the law, dismissal of the complaints

was appropriate here. See *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292.

For the reasons stated, the order of the trial court dismissing plaintiffs' third-amended complaints is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

Two rules of law are implicated in this lawsuit. The first is that police officers have a duty to exercise ordinary care in carrying out their responsibilities. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Andrews v. City of Chicago* (1967), 37 Ill. 2d 309, 226 N.E.2d 597; *Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 246 N.E.2d 100; *Moore v. Cook* (1959), 22 Ill. App. 2d 48, 159 N.E.2d 496.) The second proposition is that under the common law a municipality or its employees is not liable for failure to supply general police or fire protection. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.) This second proposition is codified in section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 4—102). (*Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 2d 172, 466 N.E.2d 1183.) In this appeal the defendants do not raise the Tort Immunity Act as a defense and I think the majority should not have gratuitously considered this issue.

The factual setting is as the majority relates it. Officer Callahan stopped Ranos for a traffic violation. Callahan focused his spotlight on the Ranos vehicle. Under the allegations of the complaint, the spotlight shining in the rearview mirror made it difficult for Ranos to see the decedent's vehicle, thereby being a cause of the deaths of the two plaintiffs. The majority concludes that the gist of the complaint is that Officer Callahan failed to take measures to protect the safety of the decedents, thereby implicating the second proposition of law stated above, that is, that a municipality is not liable for failure to provide police protection. (184 Ill. App. 3d at 246.) The difficulty with the position of the majority in my estimation is that they cite no case law to support their conclusion that the second proposition of law controls this case. On the contrary, I believe that case law opposes the position of the majority.

In *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423,

the defendant municipality through its police department set up a roadblock to intercept a car driven by Lundeen. The plaintiff's decedent approached the roadblock and was directed by the police to park on the shoulder of the road. The decedent was not informed of the purpose of the roadblock. The Lundeen car collided head on with the decedent's vehicle causing his death. The appellate court stated that case law holds that a police officer acting "in the performance of his duties [and] circumstances similar to those seen in this case owes a duty to exercise ordinary care for the safety of others in carrying out his responsibilities." (*Brooks*, 49 Ill. App. 3d at 6, 364 N.E.2d at 427.) In *Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 246 N.E.2d 100, a Chicago police officer was pursuing a vehicle operated by Larry Benford. The Benford vehicle struck a pedestrian named Eiermann, whose body, in turn, struck the plaintiff Sundin. The complaint charged Officer Hughes with negligence. The defendant contended that the complaint failed to allege a duty. The appellate court found that a duty had been sufficiently alleged. In *Moore v. Cook* (1959), 22 Ill. App. 2d 48, 159 N.E.2d 496, a police officer who was engaged in a chase struck the plaintiff's automobile. The court, in affirming the recovery of a judgment by the plaintiff, explained that a police officer is answerable to private persons resulting from the negligent performance of the officer's ministerial duties.

Each of the cases cited above involved policemen attempting to apprehend offenders. And each of these cases was analyzed under the proposition of law which requires officers to exercise ordinary care when carrying out their responsibilities. I fail to see any distinction between these cases and the instant case, where the police officer apprehended an alleged traffic violator.

Yet all of these cases would seemingly be overruled by the holding of the majority, since the majority finds that the gist of the instant complaint is that the officer failed to take measures to protect the safety of the decedents, which could equally be said about each of the above cases. To read the complaint as alleging that the police are charged with failure to provide police protection is indeed strained. The holding of the majority would dramatically constrict the responsibility of municipalities and call into question a significant body of case law.

I would reverse the judgment of the trial court.