**Catherine HAYES, administratrix of the Estate of Michael P. Hayes, Plaintiff,**

v.

**CITY OF DES PLAINES, Police Chief Robert Sturlini, Patrol Division Commander John Meese,[1] Watch Commander Walter Lang,[2] Officer Dick Lalowski, and Officer Gregory Halverson, Defendants.**

**No. 97 C 8412.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 26, 1998.

---

**1.** Initially, the Complaint listed Patrol Division Commander John Doe as a defendant. Subsequent to filing her Motion to Strike Certain of Defendants' Affirmative Defenses, Ms. Hayes filed an amended complaint which substituted John Meese for John Doe.

**2.** The Amended Complaint also substituted Walter Lang in place of Watch Commander Thomas Roe.

Stuart David Gordon, Zukowski, Rogers, Flood & McArdle, Chicago, IL, for Plaintiff.

William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

The dispute before the Court arises from Plaintiff's Motion to Strike Certain[3] of Defendants' Affirmative Defenses. For the reasons set forth below, this Court grants in part, and denies in part, Plaintiff's motion.

### BACKGROUND

Plaintiff, Catherine Hayes, filed suit against Defendants, the City of Des Plaines ("the City") and several of its police officers, after her former husband, Michael P. Hayes, committed suicide while being held in an interview room at the police station. (Complaint ¶¶ 1, 4, 20, 22.) Mr. Hayes allegedly broke into the apartment of an ex-girlfriend on December 15, 1996. (Complaint ¶ 11.) Later that day, Officer Dick Lalowski called Mr. Hayes and asked him to come into the police station. (Complaint ¶ 13.) At some point after Mr. Hayes arrived at the station, Officer Lalowski arrested him. (Answer ¶ 16.) Sometime thereafter, Mr. Hayes eventually told Officer Lalowski that he had experienced "suicidal thoughts in the past," and that a doctor was treating him for his "condition." (Answer ¶ 15.) Defendants admit that Mr. Hayes had a scar on his wrist, but the parties disagree as to the visibility and obviousness of the scar, and whether it was a scar from a prior suicide attempt. (Complaint ¶ 15; Answer ¶ 15.)

Officer Lalowski apparently noted in Mr. Hayes' arrest report the terms "Med Sui" under the heading "Cautions." (Complaint ¶ 17, Ex. B.) While Officer Lalowski completed the arrest report, he allegedly left Mr. Hayes alone in an interview room. (Complaint ¶ 16, Answer ¶ 16.) The interview room had no electronic surveillance, but it did contain a pay telephone. (Complaint ¶ 16.) A few hours after Mr. Hayes' arrest, Officer Gregory Halverson photographed and fingerprinted him. (Answer ¶ 18.) After processing him, Officer Halverson returned Mr. Hayes to the interview room alone. (Answer ¶ 19.) Approximately one hour later, a non-defendant officer found Mr. Hayes on the floor with the pay telephone cord wrapped around his neck. (Complaint ¶ 20.) The officer, and several unidentified officers, attempted to resuscitate Mr. Hayes and then called for an ambulance. (Complaint ¶ 21.) Unfortunately, Mr. Hayes' life could not be saved, and it was determined that suicide caused his death. (Answer ¶ 22.)

Ms. Hayes is suing the City, and each individual Officer, on five different counts. Count I charges each Defendant with violating Mr. Hayes' civil rights under 42 U.S.C. § 1983 (" § 1983"). (Complaint at 6, 9.) Counts II through V are all pendant state claims. Count II alleges that Defendants were negligent. (Complaint at 9, 10.) Count III charges Defendants with willful and wanton conduct. (Complaint at 10, 11.) Finally, Counts IV and V raise claims against Defendants under 740 ILL. COMP. STAT. 180/1 (West 1983) for: 1) wrongful death and negligence; and 2) wrongful death and willful and wanton conduct, respectively. (Complaint at 11–13.)

Defendants have set forth ten affirmative defenses, and Ms. Hayes has moved to strike the following: the second affirmative defense, going to Count I; the third, sixth and tenth affirmative defenses, going to Counts II through V; and the fourth and fifth affirmative defenses, going to Counts II and IV. (Motion to Strike at 1; Affirmative Defenses at 1–3.)

### DISCUSSION

#### A. The Standard for a Motion to Strike Affirmative Defenses

Under Federal Rule of Civil Procedure 12(f), a motion to strike is appropriate if

---

**3.** Ms. Hayes moves to strike Defendants' second, third, fourth, fifth, sixth and tenth affirmative defenses.

it eliminates an insufficient defense. FED. R. CIV. P. 12(f). The court will deny a motion to strike a defense if the defense presents " 'substantial questions of law or fact' " or " 'if the insufficiency of the defense is not clearly apparent on the face of the pleadings, nor can reasonably be inferred from any state of facts in the pleadings.' " *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir.1975)(quoting *United States v. 187.40 Acres of Land, Huntingdon County, Pa.*, 381 F.Supp. 54, 56 (M.D.Pa.1974)).

 The court disfavors motions to strike, because it prefers that defenses be heard if the possibility exists that the " 'defenses may succeed after a full hearing on the merits.' " *416.81 Acres*, 514 F.2d at 631 (quoting *187.40 Acres*, 381 F.Supp. at 56). Therefore, the court will only strike an affirmative defense " '[i]f it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint....' " *Van Schouwen v. Connaught Corp.*, 782 F.Supp. 1240, 1245 (N.D.Ill.1991)(quoting *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill. 1982)).

## B. Application of the Motion to Strike Standard to Defendants' Affirmative Defenses

### 1. The Second and Third Affirmative Defenses

 Defendants cannot support their second and third affirmative defenses, which state that Mr. Hayes' suicide is a bar to recovery on all of Ms. Hayes' counts under § 1983 and Illinois law, respectively. Suicide is neither a federal crime nor a statutory crime in Illinois.[4] However, the Seventh Circuit has held that prison officials may be liable under § 1983 for a pre-trial detainee's

suicide, if a prison official is deliberately indifferent to a substantial suicide risk. *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 603, 139 L.Ed.2d 891 (1997). Pretrial detainees have, at least, the same constitutionally protected rights as convicted prisoners. *Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir. 1992).

 In Illinois, law enforcement officials owe a "general duty of care to those who have been arrested and incarcerated" as well as to those already convicted of a crime. *Dezort v. Village of Hinsdale*, 35 Ill.App.3d 703, 342 N.E.2d 468, 472–73 (Ill.App.1976). The duty includes protecting prisoners from "self-injury or self-destruction" by requiring police officers to use "ordinary and reasonable care for the preservation of their prisoner's health and life under the circumstances of the particular case." *Id.* at 473.

Whether Mr. Hayes was a pre-trial detainee at the time of his suicide is unclear, but both sides do agree that he was arrested and detained. Both sides would also probably agree that Mr. Hayes was going to be placed into a cell shortly to await arraignment. Clearly, Defendants had a duty to at least exercise ordinary and reasonable care toward Mr. Hayes after his arrest. As set forth by both the federal and Illinois state courts, suicide has not been a bar to recovery under § 1983 or Illinois statutory law.[5] Therefore, this Court strikes the Defendants' second and third affirmative defenses.

### 2. The Fourth Affirmative Defense

 The remaining affirmative defenses concern the rest of the state claims against the Defendants. The Defendants' fourth affirmative defense is that the Officers were engaged in the enforcement of a law and,

---

4. Defendants cited cases from various jurisdictions, including Illinois, which consider suicide immoral and a common law crime. However, under Illinois law, a particular act is not characterized as a criminal offense unless it is promulgated in an Illinois statute. *See* 720 ILL. COMP. STAT. 5/1–3 (West 1983). Additionally, the Supreme Court explained that only legislatures can create federal crimes. *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Therefore, without any legislation

making suicide either a federal or a state crime in Illinois, Defendants' argument that suicide is a common law crime and, therefore, a bar to recovery, remains unpersuasive to this Court.

5. This Court could find no cases where a decedent's suicide was alleged to be a crime and used as an affirmative defense by an individual or municipality. Therefore, this issue appears to be one of first impression.

**550**

thereby, immune from liability for negligence under Counts II and IV. Such an affirmative defense raises a substantial question of fact, which this Court will not strike.

In Illinois, a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILL. COMP. STAT. 10/2–202 (West 1983). The Illinois Supreme Court has held that the term "execution or enforcement" of a law should be given its plain and ordinary meaning. *Arnolt v. City of Highland Park*, 52 Ill.2d 27, 282 N.E.2d 144, 147 (Ill.1972). The court in *Arnolt* held that, not every act performed by a police officer while on duty is an execution or enforcement of a law. *Id.* However, "[e]nforcing the law is rarely a single, discrete act, but is instead a course of conduct." *Thompson v. City of Chicago*, 108 Ill.2d 429, 92 Ill.Dec. 231, 484 N.E.2d 1086, 1088 (Ill.1985).

The Illinois courts have found that certain kinds of acts constitute "enforcing or executing" a law, while other acts do not. *See Thompson v. City of Chicago*, 108 Ill.2d 429, 92 Ill.Dec. 231, 484 N.E.2d 1086, 1088 (Ill.1985)(attempting to disperse an unruly crowd is an act of enforcing the law); *Bruecks v. County of Lake*, 276 Ill.App.3d 567, 213 Ill.Dec. 68, 658 N.E.2d 538, 539 (Ill.App.1995)(holding that a police officer en route to a "shots fired" call is enforcing the law); *Leaks v. City of Chicago*, 238 Ill.App.3d 12, 179 Ill.Dec. 324, 606 N.E.2d 156, 159 (Ill.App.1992)(officer engaging in routine patrol is not enforcing the law); *Simpson v. City of Chicago*, 233 Ill.App.3d 791, 175 Ill. Dec. 29, 599 N.E.2d 1043, 1045 (Ill.App.1992)(investigating a missing person report is not an act of enforcing the law); *Trepachko v. Village of Westhaven*, 184 Ill. App.3d 241, 132 Ill.Dec. 602, 540 N.E.2d 342, 347 (Ill.App.1989)(officer stopping a car for a traffic violation is enforcing a law); *Fitzpatrick v. City of Chicago*, 112 Ill.2d 211, 97 Ill.Dec. 419, 492 N.E.2d 1292, 1297 (Ill.1986)(investigating a traffic accident is an act of enforcing the law); *Glover v. City of Chicago*, 106 Ill.App.3d 1066, 62 Ill.Dec. 597, 436 N.E.2d 623, 629 (Ill.App.1982)(officer making an arrest is enforcing the law). As the above cases set forth, the trier of fact must determine whether the officer in question performed the particular injurious act while enforcing the law. *Arnolt*, 282 N.E.2d at 148–49.

In the case at hand, Mr. Hayes committed suicide after police officers had already arrested, processed, and completed necessary paperwork on him. Further, the facts are unclear as to why Mr. Hayes was returned to the interview room after being fingerprinted and photographed, as opposed to being placed in a cell. However, as the Illinois Supreme Court has held, the trier of fact must decide whether the Defendant Officers were engaged in a course of conduct of enforcing the law at the time when Mr. Hayes committed suicide. Therefore, this Court will not strike Defendants' fourth affirmative defense.

### 3. The Fifth Affirmative Defense

■ This Court will not strike Defendants' fifth affirmative defense, which also goes to Counts II and IV. Defendants claim that they are entitled to immunity under 745 ILL. COMP. STAT. 10/4–105 (West 1983)("4–105"), because the Officers did not have actual knowledge that Mr. Hayes was a suicide risk nor did they willfully and wantonly ignore that risk; and therefore, they were under no obligation to provide Mr. Hayes with medical care.

■ A prison official may have actual knowledge of a substantial risk, and could be found deliberately indifferent, if the official ignores an "obvious" risk. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Seventh Circuit in *Hall* acknowledged that officers may have actual knowledge of a suicide risk if a detainee acts in a bizarre manner. 957 F.2d at 405. Further, "suicidal tendencies or intent" to commit suicide may also show that officers had actual knowledge of a risk to the detainee. *Mathis*, 120 F.3d at 92.

Willful and wanton conduct is defined as "an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others . . . ." 745 ILL. COMP.

STAT. 10/1–210 (West 1983). The Illinois Supreme Court has added that willful and wanton conduct shows a "reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness...." *Lynch v. Board of Educ. of Collinsville*, 82 Ill.2d 415, 45 Ill.Dec. 96, 412 N.E.2d 447, 457 (Ill.1980)(internal quotations and citations omitted).

 The parties disagree as to Defendants' actual knowledge of Mr. Hayes' being a threat to himself. Both Defendants and Ms. Hayes agree that Mr. Hayes admitted to having had suicidal thoughts in the past and to being under a physician's care for those thoughts. Both sides also agree that the Officers noticed a scar on his wrist. However, Defendants assert that the Officers did not know, nor was it obvious to them, that the scar was from a previous suicide attempt. Defendants contest Ms. Hayes' claim that they should have known Mr. Hayes was in imminent danger of attempting suicide. Neither party asserted that Mr. Hayes threatened to commit suicide at the police station, or acted in an otherwise threatening or bizarre manner, which would have put the officers on notice that there was an impending danger. Without actual knowledge of Mr. Hayes being an imminent suicide risk, the Officers were not reckless in leaving him unattended in a room with a pay phone,[6] the cord from which he ultimately used to kill himself. After a full hearing on the merits, the Officers may prove that they had no actual knowledge of Mr. Hayes' serious mental condition or that the risk to his life was obvious. Therefore, this Court will not strike Defendants' fifth affirmative defense.

### 4. The Sixth Affirmative Defense

 This Court strikes Defendants' sixth affirmative defense, going to Counts II through V, which asserts that they are entitled to immunity while performing discretionary acts. Under 720 ILL. COMP. STAT. 10/2–201 (West 1983)("2–201"), "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

The Illinois Supreme Court has held that a public official receives immunity if the official's position requires the determination of policy *or* the exercise of discretion, and the act or omission that caused the injury was "both a determination of policy *and* an exercise of discretion." *Harinek v. 161 N. Clark St., Ltd. Partnership*, 181 Ill.2d 335, 230 Ill. Dec. 11, 692 N.E.2d 1177, 1181 (Ill.1998)(emphasis added).[7] Policy decisions are those that require a balancing among competing interests. *West v. Kirkham*, 147 Ill.2d 1, 167 Ill.Dec. 974, 588 N.E.2d 1104, 1109 (Ill.1992). Discretionary acts are usually unique acts particular to the public office in question. *Snyder v. Curran Township*, 167 Ill.2d 466,

---

**6.** Ms. Hayes claims that Defendants do not have immunity under 4–105, because they showed a reckless disregard toward Mr. Hayes by placing him in an interview room alone, even though they knew he had experienced suicidal thoughts in the past. (Reply at 13, n. 6.) Ms. Hayes contends that the Officers violated their own regulation pursuant to the Des Plaines Police Lock–Up Facilities General Order (OPS–240), which prohibits leaving a mentally disturbed subject alone in an interview room, and requires that the subject "be under constant supervision." (Reply at 13, n. 6; Ex. A.) However, failing to follow a self-imposed departmental regulation is not even negligence per se, because the party may prove that it "acted reasonably under the circumstances, despite the violation." *Delasky v. Village of Hinsdale*, 109 Ill.App.3d 976, 65 Ill. Dec. 454, 441 N.E.2d 367, 372 (Ill.App.1982). Therefore, this Court does not find that the De-fendants were reckless in failing to adhere to their own regulation.

**7.** The *Harinek* decision is relatively new and addresses for the first time the issue of whether 2–201 requires a public entity's or public employee's act to be both a policy decision *and* an exercise of discretion. 230 Ill.Dec. 11, 692 N.E.2d at 1181. While the majority found that the plain language of the statute requires such a reading, at least two justices disagreed with the court's finding and instead interpreted 2–201 as not requiring the public entity's or public employee's act to "satisfy the independent requirement of being a policy determination...." *Id.* at 1184–85. Before *Harinek*, Illinois courts assumed that exercising discretion "encompass[ed]," and was not distinct from, making policy determinations. *Id.* at 1184.

212 Ill.Dec. 643, 657 N.E.2d 988, 993 (Ill. 1995).

Unlike the policy in *Jackson v. City of Chicago,* 645 F.Supp. 926, 928 (N.D.Ill.1986), where the police department did not provide for the prevention of detainee suicides in lock-up cells, the City did have a policy toward detainees with mental health problems. Pursuant to the Des Plaines Police Lock–Up Facilities General Order (OPS–240), detainees with mental disorders should not be placed in interview rooms unattended and should receive constant supervision. (Reply, Ex. A.) In following the Order, officers are not exercising discretion, rather, they are following a set of prescribed rules as to the detainment of those with mental illnesses. However, the officers do exercise discretion when they determine whether a subject is mentally ill or not.

The trier of fact could find that Officers Lalowski and Halverson exercised discretion in deciding to leave Mr. Hayes in the interview room with a pay phone instead of placing him in a lock-up. However, the question then arises as to whether these acts of discretion were also policy decisions, and whether each Officer was in a position to either exercise discretion or make policy. Defendants basically admitted that the individual Officers do not make policy determinations when they denied that Police Chief Sturlini creates "policies and practices" for the department. (Answer ¶ 6.) Surely, if the Police Chief does not make policy for the department, it stands to reason that the officers below him are not policy makers, either.

The individual Officers do not appear to have a basis for immunity under 2–201, because, as now required by *Harinek,* they were not both determining policy *and* exercising discretion in their individual actions toward Mr. Hayes. Therefore, this Court strikes the Defendants' sixth affirmative defense.

## 5. The Tenth Affirmative Defense

■ Finally, this Court will not strike Defendants' tenth affirmative defense, which also goes to Counts II through V of the Complaint. Defendants assert that, pursuant to 745 ILL. COMP. STAT. 10/4–103 (West 1983)("4–103"), they are immune from liability for injuries related to the supervision of inmates. Under the statute, "[n]either a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility...." and if one is provided, for failing to provide adequate supervision or facilities. *Id.* The provision further states that there is no requirement for officials to periodically inspect prisoners. *Id.*

Courts must never "'depart from [the] plain language'" of a statute by interpreting it in a way "'which conflict[s] with the clearly expressed legislative intent.'" *Jefferson v. Sheahan,* 279 Ill.App.3d 74, 215 Ill.Dec. 815, 664 N.E.2d 212, 214 (Ill.App.1996)(quoting *Certain Taxpayers v. Sheahen,* 45 Ill.2d 75, 256 N.E.2d 758, 764 (Ill.1970)). In *Jefferson,* the court held that 4–103 did not provide an exception for willful and wanton conduct. 215 Ill.Dec. 815, 664 N.E.2d at 214. The court reasoned that the legislature would have included an exception for willful and wanton conduct if it had intended such behavior to exclude public entities and officials from immunity. 215 Ill.Dec. 815, 664 N.E.2d at 214–15. The court also reasoned that the legislature intended to shield the Sheriff's office from the enormous number of complaints it would undoubtedly receive, were it not for the absolute immunity protection granted by 4–103. *Id.* at 215–16.

Ms. Hayes contends that an interview room is not a "jail, detention, or correctional" facility, and that therefore, Defendants are not protected by 4–103. Even if the Court, *arguendo,* accepted her argument, Defendants could still claim immunity under 4–103, because, reading the plain language of the statute, the first part of the provision clearly immunizes a public entity or official for not providing a detention facility at all.

The General Order for the Des Plaines Police Lock–Up Facilities provides information on the supervision of lock-up facilities and instructions for controlling both the facilities and its prisoners. (Reply, Ex. A.) The section in the Order entitled "Control of Lock–Up Facilities and Prisoners" for "Mental Subject in Custody," instructs personnel

about the protocol for leaving mentally ill detainees in interview or security rooms. (Reply, Ex. A.) Although the words "jail," "detention," or "correctional facility" are not present in the particular section, it appears that the City intended to include interview rooms as a type of lock-up facility, given its placement in the instructions for controlling lock-up facilities.

■ Additionally, the trier of fact may find that Defendants did not have actual knowledge of the imminent risk of Mr. Hayes committing suicide, or that they should have known about the risk, because the risk was obvious. Then, Defendants may use the general provision under 4–103, which does not require inspection of prisoners. They may also use their own regulation, which, presumably, only requires inspection of prisoners with a *known* "mental disorder." Lastly, Defendants may use 4–103 regardless of whether or not an interview room is considered a jail, detention or correctional facility, because 4–103 does not require an entity to provide such facilities, anyway. As the *Jefferson* court found, 4–103 has no exception for willful and wanton conduct; therefore, the statute provides complete immunity to public entities and officials who fail to provide a detention facility or fail to periodically inspect its prisoners. Thus, for the aforementioned reasons, this Court will not strike Defendants' tenth affirmative defense.

### CONCLUSION

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion to Strike Defendants' second, third, and sixth affirmative defenses be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that:

Plaintiff's Motion to Strike Defendants' fourth, fifth, and tenth affirmative defenses be, and the same is hereby, **DENIED.**