VALERIA JACKSON *et al.*, Plaintiffs-Appellants, v. CHICAGO FIRE-FIGHTERS UNION, LOCAL NO. 2, *et al.*, Defendants-Appellees (Jane Byrne, Indiv., *et al.*, Defendants).

First District (1st Division)   No. 85—2954

Opinion filed September 8, 1987.

Melanie Grabavoy, of Chicago, for appellants.

Jacobs, Burns, Sugarman & Orlove, of Chicago (Robert S. Sugarman and Nancy E. Tripp, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of a five-count complaint filed by plaintiffs, owners and residents of the premises located at 646 and 648 North Ridgeway, Chicago (the Ridgeway premises), against defendants: the Chicago Firefighters Union, Local No. 2; Frank Muscare, president of the union; the city of Chicago; Jane Byrne, mayor of Chicago; Richard Brzeczek, superintendent of the Chicago police department; and certain Chicago police officers and fire fighters, seeking recovery for personal and property damage allegedly incurred as the result of defendant fire fighters' failure to tend to a fire which occurred at the Ridgeway premises on February 22, 1980. In their complaint, plaintiffs alleged: negligence (count I), willful and wanton misconduct (count II), wrongful death (count III), survival action (count IV), and public nuisance (count V), all of which were predicated on defendants' alleged breach of their duty to provide fire protection to plaintiffs. On defendants' motion, the trial court dismissed the city of Chicago, Jane Byrne, Richard Brzeczek, and the police officers from the action on the grounds that plaintiffs had failed to timely file both the statutory

notice of claim and the complaint.[1] The remaining defendants then moved to strike and dismiss the complaint on the grounds that plaintiffs' allegations failed to show that defendants had any duty to provide fire protection to plaintiffs, and that sections 5—101 and 5—102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1— 101 et seq.) affirmatively preclude imposition of such a duty. In addition, defendants argued that plaintiffs had failed to timely file both the statutory notice of claim and the complaint.

In granting defendants' motion to dismiss, the trial court focused solely on what it found to be the two-fold "threshold issue": (1) whether fire fighters have a common law duty to the plaintiffs that is negated by the General Assembly's passage of sections 5—101 and 5— 102 of the Tort Immunity Act, except under circumstances where a "special duty" exists; or (2) whether sections 5—101 and 5—102 are simply legislative restatements of the absence of a common law duty between a fire fighter and a specific plaintiff. The trial court found that regardless of whether sections 5—101 and 5—102 are statutory restatements of the absence of a duty owed by fire fighters, or whether the sections act to negate a common law duty (in the absence of a showing of special duty) by fire fighters, dismissal of the cause of action was required on the grounds that "no common law duty exists under the facts alleged in the complaint." In addition, the trial court found that plaintiffs had failed to sufficiently allege the existence of a special duty between defendants and plaintiffs.

On appeal, plaintiffs contend that the trial court erred in dismissing their complaint because: (1) defendants were not municipal employees acting within the scope of their employment at the time of the fire at the Ridgeway premises and, thus, are not entitled to the protections of sections 5—101 and 5—102 of the Tort Immunity Act; and (2) in the alternative, the special duty exception had been properly alleged in the complaint. For the following reasons, we affirm the judgment of the circuit court.

In support of their contention that the court erred in dismissing their complaint, plaintiffs initially argue that defendants' participation in an illegal strike at the time of the fire at the Ridgeway premises triggered two exceptions to the Tort Immunity Act, thereby precluding application of the Act's protections to them. First, plaintiffs contend that defendant fire fighters were not acting within the scope of

---

[1]Plaintiffs do not appeal the dismissal of defendants city of Chicago, Jane Byrne, Richard Brzeczek, and the police officers.

their employment while they were on strike. Therefore, because section 2—204 of the Tort Immunity Act limits coverage of the Act to public employees who are acting within the scope of their employment, the fire fighters were not covered and are liable for their failure to provide fire protection. Second, plaintiffs argue that pursuant to section 2—202 of the Act, which denies immunity for acts or omissions which constitute willful and wanton negligence, defendants are liable for the intentional violation of the court order which enjoined the strike and for their refusal to tend to the fire at the Ridgeway premises.

In our view, plaintiffs' scope of employment argument is fundamentally incongruous. Assuming *arguendo* that defendant fire fighters were not acting within the scope of their employment at the time they failed to tend to the fire at the Ridgeway premises, then they must have been acting as private citizens. In the latter capacity, defendants were under no duty to provide fire protection. In support of their position, plaintiffs rely on *Bauer v. City of Chicago* (1985), 137 Ill. App. 3d 228, 484 N.E.2d 422. However, we find that *Bauer* more accurately supports a finding of no duty. In *Bauer*, a suspended Chicago police officer was involved in a shooting. The city of Chicago refused to represent the officer on the ground that he had not been acting within the scope of his authority at the time of the shooting. The trial court granted summary judgment in the city's favor. On appeal, the *Bauer* court held that, "as a matter of law, *** a suspended police officer cannot be acting within the scope of his employment, even if that officer is engaged in direct police action. ***. A suspended officer has only the same rights and obligations in preventing and stopping the commission of crime as any private citizen." 137 Ill. App. 3d 228, 233, 484 N.E.2d 422.

■ Although we make no determination as to whether the employment status of a suspended police officer is analogous to that of a striking fire fighter, *Bauer* indicates that once a determination is made that a public employee was not acting within the scope of his employment, that public employee's duty to others is that of any other private citizen. Thus, in the present case, whether defendants were protected by the Tort Immunity Act or whether they acted outside of the scope of their employment as private citizens, we find that they had no legal duty to offer fire protection to plaintiffs.

■ We next address plaintiffs' contention that defendants' intentional violation of the court's injunction and their refusal to tend the fire at the Ridgeway premises constituted willful and wanton negligence which, pursuant to section 2—202, is not protected by the Tort

Immunity Act. We disagree and find *Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 363 N.E.2d 87, and *Nieder v. Gacy* (1984), 121 Ill. App. 3d 854, 460 N.E.2d 342, determinative of the issue. As a preliminary note, in reaching this conclusion, we make no determination as to whether defendants' conduct did constitute willful and wanton negligence. Rather, we address only the issue as to whether section 2—202, a general provision, provides an exception to the liability protections of article V of the Tort Immunity Act, which specifically addresses and is limited to fire protection.

In *Jamison*, James O'Malley shot and killed John Jamison. For three days prior to the shooting, O'Malley's son had warned the Chicago police that his father had been acting in a violent manner and requested that the police arrest him. The police refused to do so and the shooting occurred. Plaintiff, administratrix of Jamison's estate, filed a wrongful death action against the city of Chicago and the individual police officers, alleging, *inter alia*, that the individual officers were guilty of willful and wanton negligence in refusing to arrest O'Malley.

In response, defendants moved to dismiss the complaint pursuant to section 4—102 of the Tort Immunity Act, which specifically provides immunity to police personnel for failure to prevent the commission of crimes. The motion was denied and the question was certified for appeal. The appellate court declined to address the Tort Immunity Act issue and reversed the trial court on the grounds that plaintiff's complaint had failed to sufficiently allege willful and wanton negligence. Plaintiff amended the complaint and defendants again moved to strike and dismiss the complaint on the basis of the Tort Immunity Act. Once again, the motion was denied and the question was certified for appeal.

On appeal, the *Jamison* court addressed the issue of whether section 2—202, a general provision of the Tort Immunity Act, overrides the more specific immunity sections of article IV of the Act, entitled "Police and Correctional Activities." Section 2—202 states:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence."

Article IV of the Tort Immunity Act pertains specifically to public employees engaged in the functions of enforcing the law and making arrests. In particular, sections 4—102 and 4—107 provide immunity for, *inter alia*, the failure to prevent the commission of crimes, the failure to apprehend criminals, and the failure to make an arrest.

Recognizing that section 2—202 is broader than sections 4—102

and 4—107, the *Jamison* court held that there was no conflict between section 2—202 and section 4—107 and that "section 4—107 provides blanket immunity in the area of police discretion over arrests" (*Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 569, 363 N.E.2d 87), including immunity for willful and wanton misconduct. Seven years later, *Jamison* was found dispositive of an identical issue raised in *Nieder v. Gacy* (1984), 121 Ill. App. 3d 854, 460 N.E.2d 342.

In our view, the issue rased in *Jamison* is analogous to the section 2—202 question raised by plaintiffs in the present case. Just as article IV of the Tort Immunity Act specifically provides immunity to police personnel, article V of the Act specifically provides immunity to fire fighters for the "failure to establish a fire department or *** to provide fire protection service" (Ill. Rev. Stat. 1985, ch. 85, par. 5—101); "for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or to maintain sufficient personnel, equipment or other fire protection facilities" (Ill. Rev. Stat. 1985, ch. 84, par. 5—102); "for an injury resulting from the condition of fire protection or fire fighting equipment or facilities," or "for an injury caused by an act or omission of a public employee while engaged in fighting a fire" (Ill. Rev. Stat. 1985, ch. 85, par. 5—103); and for damage to bridges or roads caused by fire fighting equipment responding to or returning from an alarm (Ill. Rev. Stat. 1985, ch. 85, par. 5—104). Accordingly, we find that article V of the Tort Immunity Act is intended to provide blanket immunity in the specific area of fire protection and is not subject to the exception set forth in section 2—202. In reaching this decision, we find the *Jamison* court's conclusion that blanket immunity for police is necessary to protect municipalities from "limitless liabilities" (*Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 570, 363, N.E.2d 87) equally applicable to fire fighters.

■ Next, plaintiffs contend that the trial court erred in finding that their complaint had failed to sufficiently allege the "special duty" exception to immunity for public employees. The four requisite elements to the "special duty" exception, whereby a public employee owes a special duty to an individual, rather than merely to the public at large, are: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or willful in nature; and (4) the injury must occur while plaintiff is under the direct and immediate control of employees or agents of the municipality. (*Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960.) All four elements must be alleged. In response to

plaintiffs' contention that they had alleged facts sufficient to satisfy all four elements, defendants address only the element regarding direct and immediate control, asserting that: (1) the location of a fire station across the street from the Ridgeway premises did not put plaintiffs in defendants' special care; and (2) even if the fire fighters had been aware of the fire at the Ridgeway premises, actual knowledge of the fire does not satisfy the element of control. We agree with defendants' position and, thus, will confine our discussion to the element of direct and immediate control.

This court has addressed the issue of what constitutes direct and immediate control in *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183, and *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960. In *Gardner*, the plaintiff was attacked, in the presence of police officers by four persons whom plaintiff had identified as his assailants. The attack occurred when, at the request of the police officers, plaintiff accompanied them to a specific location in order to view several suspects. The appellate court reversed the dismissal of plaintiff's complaint on the ground that he had been "called into a position of peril by the police." *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 380, 219 N.E.2d 1470.

In *Marvin*, plaintiff was attacked by six youths near the cashiers' window of a subway station. A police officer chased the youths away from the window and told them to go downstairs to the platform. When the plaintiff asked the officer to accompany him downstairs to the platform, the officer refused, explaining that the youths were going in a different direction and would be on a different platform. However, when plaintiff walked down the stairs to the platform, the youths were waiting and attacked him. During the attack, the officer was upstairs talking to the ticket agent. The appellate court affirmed the dismissal of plaintiff's complaint against the city of Chicago on the ground that the allegation that the officer had "directed, permitted or caused" plaintiff to descend to the platform was insufficient to allege direct and immediate control.

In *Galuszynski*, plaintiffs sought recovery for injuries incurred when burglars entered their home and attacked them. Plaintiffs had placed a call to the police department through the 911 emergency telephone system to report the presence of intruders attempting to break into their home. By the time police officers arrived 24 minutes later, the intruders had entered plaintiffs' home, had attacked them and had stolen personal property. Plaintiffs filed a personal injury

action against the city of Chicago, alleging "that the city represented to the public that the purpose of the 911 emergency system was to serve as a means of contacting the police in emergency situations requiring immediate police response; that plaintiffs called the police department through the 911 system, reported a burglary in progress and were told to 'watch for the police'; and that the city 'carelessly and negligently' and 'wilfully and wantonly' failed to dispatch police officers to plaintiffs' home for 24 minutes, thereby allowing intruders to complete their forced entry of plaintiffs' home and cause injury to plaintiffs." *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 507, 475 N.E.2d 960.

On appeal, the reviewing court found that the first three requirements of the special duty exception had been met, but that plaintiffs had failed to allege sufficient allegations to lead to the conclusion that plaintiffs were under the direct and immediate control of the police. In reaching its decision, the court distinguished the situation where the police created the position of peril (*Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147), and one where the plaintiff sought police protection which was not provided. (*Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.) In the former, direct control was found to exist. In the latter, it was not. The *Galuszynski* court found that the situation before it resembled that in *Marvin*, where the plaintiff sought police protection which was not provided.

■ ■ In the present case, contrary to plaintiffs' assertion, we find that both *Marvin* and *Galuszynski* indicate that a public employee's actual knowledge of another's need for protection is not determinative of a finding of direct and immediate control. Rather, the pivotal fact is whether the police officer or the fire fighter was responsible for the occurrence which gave rise to the need for protection. Clearly, the defendants at bar were not responsible for the fire to the Ridgeway premises. Instead, similar to the situations in *Galuszynski* and *Marvin*, plaintiffs at bar merely sought protection which was not provided. Accordingly, we agree with the trial court that plaintiffs' complaint did not sufficiently allege the special duty exception.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

O'CONNOR and MANNING, JJ., concur.