565 N.E.2d 654 (1990)
139 Ill.2d 501
152 Ill.Dec. 121
George BURDINIE, Appellee,
v.
The VILLAGE OF GLENDALE HEIGHTS, Appellant.
No. 69965.
Supreme Court of Illinois.
November 30, 1990.
*656 O'Reilly, Cunningham, Norton & Mancini (James L. DeAno, of counsel), Wheaton for appellant.
Paul Harrison Stacey, Wheaton, for appellee.
*657 Justice STAMOS delivered the opinion of the court:
Defendant, Village of Glendale Heights, owns and operates a municipal sports complex which includes public swimming facilities. Plaintiff, George Burdinie, brought this action against defendant in the circuit court of Du Page County, seeking damages for physical injuries plaintiff allegedly sustained while participating in an adult swimming class held at defendant's sports complex. The trial court granted defendant's motion to dismiss counts II and III of plaintiff's complaint. (Ill.Rev.Stat.1989, ch. 110, par. 2-615.) The appellate court reversed. (193 Ill.App.3d 1109 (unpublished order under Supreme Court Rule 23).) We granted defendant's petition for leave to appeal (107 Ill.2d R.315(a)).

BACKGROUND
A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. (Stenwall v. Bergstrom (1947), 398 Ill. 377, 383, 75 N.E.2d 864; Curtis v. Birch (1983), 114 Ill.App.3d 127, 129, 69 Ill.Dec. 873, 448 N.E.2d 591.) When the legal sufficiency of all or part of a complaint is challenged by a section 2-615 motion to strike or dismiss, all well-pleaded facts in the attacked portions of the complaint are to be taken as true (Miner v. Gillette Co. (1981), 87 Ill.2d 7, 19, 56 Ill. Dec. 886, 428 N.E.2d 478) and a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. A motion to strike a portion of a complaint does not admit conclusions of law or fact unsupported by the specific factual allegations upon which such conclusions rest. (Curtis, 114 Ill.App.3d at 129, 69 Ill.Dec. 873, 448 N.E.2d 591.) Therefore, we will consider only the facts of this case as plaintiff presented them in his complaint.
On July 2, 1986, plaintiff registered to participate in defendant's general recreational program of adult swimming classes, held at the municipal sports complex. For a $10 fee, defendant was to "provide beginner adult swimming lessons by competent, trained instructors." On July 16, 1986, defendant allegedly "breached its agreement" with plaintiff by failing to provide a "competent, trained instructor," in that the swimming instructor "negligently and in ignorance and disregard for the safety and health" of plaintiff, and "knowing that plaintiff was a non-swimmer," instructed plaintiff to "jump" into the shallow end of the concrete swimming pool. As a result, plaintiff struck the bottom of the pool with his heel, which caused him to suffer "pain and serious injury to his back, neck, leg and other parts of his body." Plaintiff claimed medical expenses and lost wages as his damages.
Count I of the complaint alleged breach of contract and is not the subject of this appeal. Count III alleged liability in tort because defendant operated the sports complex and swimming pool as a proprietary function and not in its governmental capacity. The appellate court's order indicated that plaintiff abandoned this issue before that court. Count II alleged liability in tort because defendant had established a "special relationship of control and supervision over the plaintiff."

A. Sovereign Immunity and the Tort Immunity Act
Under the doctrine of sovereign immunity, a governmental unit is immune from tort liability. (Comment, The Special Duty Doctrine: A Just Compromise, 31 St. Louis U.L.J. 409, 410 (1987).) This doctrine has its origins in the common law principles that "the King can do no wrong," and "`the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.'" (Molitor v. Kaneland Community Unit District No. 302 (1959), 18 Ill.2d 11, 20, 163 N.E.2d 89; M. Polelle & B. Ottley, Illinois Tort Law 664 (1985), quoting Kawananakoa v. Polyblank (1907), 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834, 836.) In recent years, however, both Federal and State governments have either modified or abolished this rule. *658 See M. Polelle & B. Ottley, Illinois Tort Law 664 (1985).
Specifically, this court abolished governmental immunity in 1959. (Molitor, 18 Ill.2d at 21-22, 163 N.E.2d 89.) In response to the Molitor case, the General Assembly enacted the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill.Rev. Stat.1989, ch. 85, pars. 1-101 through 9-107). The Act adopted the general principle that local governmental units are liable in tort but limited this with an extensive list of immunities based on specific government functions.
For example, a local public entity is not liable for adopting or failing to adopt a particular enactment or for failing to enforce any law. (Ill.Rev.Stat.1989, ch. 85, par. 2-103.) There is no municipal liability for negligence connected with the administration of permits, licenses, certificates, and other authorizations (Ill.Rev.Stat. 1989, ch. 85, par. 2-104), for negligence connected with the inspection of property for health or safety hazards (Ill.Rev.Stat.1989, ch. 85, par. 2-105), for negligence connected with injuries resulting from unsafe conditions of municipal property if the local government entity had no actual or constructive notice of the unreasonably unsafe condition (Ill.Rev.Stat.1989, ch. 85, par. 3-102), for negligence resulting in injuries occurring on public property intended for recreational purposes, unless the local public entity is guilty of willful and wanton conduct (Ill.Rev.Stat.1989, ch. 85, par. 3-106), for the negligent failure to supervise an activity on public property (Ill.Rev. Stat.1989, ch. 85, par. 3-108), or for negligence resulting in injuries incurred during participation in hazardous recreational activity (Ill.Rev.Stat.1989, ch. 85, par. 3-109).
We also note that the Illinois Constitution of 1970 expressly abrogated the doctrine of sovereign immunity "[e]xcept as the General Assembly may provide by law." (Ill. Const.1970, art. XIII, § 4.) Therefore, the tort liability of a municipality such as defendant is expressly controlled by constitutional provision and legislative prerogative as embodied in the Tort Immunity Act.

B. The Special Duty Doctrine
Plaintiff, however, did not rely on the Tort Immunity Act for defining the cause of action in his complaint. Instead, plaintiff relied on a common law exception to the doctrine of governmental immunity, the "special duty," or "special relationship," doctrine.
This doctrine has been invoked in two basic factual situations. The first is where a plaintiff sues a municipality for failure to enforce a law or ordinance. Illinois courts have generally upheld the common law principle that municipalities are not liable in tort to members of the general public for failure to enforce local laws or ordinances (Arizzi v. City of Chicago (1990), 201 Ill. App.3d 368, 371, 147 Ill.Dec. 68, 559 N.E.2d 68; Lakeside Condominium "C" Association v. Frediani Developers, Inc. (1985), 135 Ill.App.3d 972, 973, 90 Ill.Dec. 686, 482 N.E.2d 665; see Ill.Rev.Stat.1989, ch. 85, par. 2-103) or for the negligent exercise of municipal authority pursuant to a governmental duty and for a governmental purpose (Fryman v. JMK/Skewer, Inc. (1985), 137 Ill.App.3d 611, 614, 92 Ill.Dec. 178, 484 N.E.2d 909), unless plaintiffs can show that the municipalities owe them a special duty that is different from its duty to the general public (Arizzi, 201 Ill.App.3d at 371-72, 147 Ill.Dec. 68, 559 N.E.2d 68). The special duty can arise in two instances: when the municipality acts in a private instead of a governmental capacity (this situation is not in question in the case at bar) or when it develops a "relationship" to an individual. Arizzi, 201 Ill.App.3d at 372, 147 Ill.Dec. 68, 559 N.E.2d 68.
This "relationship" is created when circumstances arise in which it becomes the duty of the municipality or public official to act on behalf of a specific individual, as opposed to the public at large. In such a case, the negligent failure to carry out this "special" duty is actionable. (Fryman, 137 Ill.App.3d at 617, 92 Ill.Dec. 178, 484 N.E.2d 909.) Traditionally, Illinois courts have established four elements which a *659 plaintiff must prove in order to establish such a relationship/duty:
"`(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation];
(2) there must be allegations of specific acts or omissions on the part of the municipality [citation];
(3) the specific acts or omissions * * * must be either affirmative or wilful in nature [citation]; and
(4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation].' Bell v. Village of Midlothian (1980), 90 Ill.App.3d 967, 970 [46 Ill.Dec. 382, 414 N.E.2d 104]." Fryman, 137 Ill.App.3d at 617, 92 Ill. Dec. 178, 484 N.E.2d 909.
The second factual situation in which the special duty doctrine is invoked is when a plaintiff sues a municipality for injuries negligently caused by police officers or firefighters while performing their official duties. As in the first situation, there is a common law rule which generally exempts municipalities and their employees from tort liability for failure to supply general police or fire protection. (Huey v. Town of Cicero (1968), 41 Ill.2d 361, 363, 243 N.E.2d 214; Anthony v. City of Chicago (1988), 168 Ill.App.3d 733, 736, 119 Ill.Dec. 554, 523 N.E.2d 22.) We have held, however, that when law enforcement officials exercise care or custody over an individual, the individual's status is elevated beyond that of a member of the public at large, and the "special duty" exception is activated. (Huey, 41 Ill.2d at 363, 243 N.E.2d 214; Anthony, 168 Ill.App.3d at 736, 119 Ill.Dec. 554, 523 N.E.2d 22.) A plaintiff must prove the same four elements quoted above to establish a special relationship in police and fire cases. See Anthony, 168 Ill. App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22.

C. The Lower Courts' Disposition of the Case
Despite the meager trial court record, it appears that the trial judge granted defendant's motion to strike count II by narrowly construing the special duty doctrine as applying only to police or fire department cases. The trial judge apparently granted defendant's motion to strike count III based on Ramos v. City of Countryside (1985), 137 Ill.App.3d 1028, 1034, 92 Ill.Dec. 607, 485 N.E.2d 418, which held that the payment of a fee for participation in a municipal recreational program does not create a special duty because the operation of a recreational program is not analogous to a business enterprise. Therefore, the trial court held that a municipality's maintenance of such a program is a governmental rather than a proprietary function. The record reveals that the circuit court did not discuss the four-part test for establishing a special relationship, nor did it address the Tort Immunity Act.
The appellate court, in a Rule 23 order, reversed. The court discussed the Tort Immunity Act only to the extent that it addressed the basic principles underlying the Act; the court explained that "municipalities are generally immune from tort liability for ordinary negligence in carrying out a governmental function." The court then discussed the principles of the special duty doctrine as an exception to the immunity created under the Act.
The appellate court disagreed with the trial judge and held that Ramos was inapplicable to the case because plaintiff was no longer contending that defendant's operation of a municipal swimming pool was not a governmental function. The court also disagreed with the trial judge's narrow construction of the special duty doctrine. Quoting the Anthony case, the appellate court stated, "`Illinois case law does not limit the [special duty] exception to a particular class or type of public official; instead, the exception has been held relevant to a variety of public entities. [Citations.]' (Anthony, 168 Ill.App.3d at 736 [119 Ill. Dec. 554, 523 N.E.2d 22].)" Because of this reasoning, the appellate court reversed, holding that the trial court had improperly dismissed count II "based upon the fact that [defendant's] instant operation was a nonpolice, nonfire department governmental operation."

*660 ANALYSIS
We agree with the trial court's conclusion and therefore reverse the judgment of the appellate court. However, because of the clear language of article XIII of the Illinois Constitution, which makes the General Assembly the ultimate authority in determining whether a unit of local government is immune from tort liability, we hold that the language of the Tort Immunity Act should control in any analysis of whether plaintiff's complaint states a cause of action. As we will explain, plaintiff has failed to state a cause of action under the Tort Immunity Act.
We further recognize that Illinois courts have discussed the special duty exception to the defenses and immunities provided under the Tort Immunity Act in cases decided both before and after the ratification of the present Illinois Constitution. However, as we will also explain, count II of plaintiff's complaint failed to state a cause of action under the special duty doctrine as well.

I
We first note that only article III of the Tort Immunity Act, entitled "Immunity from Liability for Injury Occurring in the Use of Public Property," is applicable to plaintiff's complaint. (See Ill.Rev.Stat. 1989, ch. 85, pars. 3-101 through 3-110.) After examining each section of article III which could reasonably be construed to apply to the operation of a municipal swimming pool, we find that only sections 3-102, 3-106, 3-108, and 3-109 of the Act are relevant to plaintiff's complaint.
Section 3-102 of the Act states that defendant had:
"the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom [it] intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it [had] actual or constructive notice of the existence of such a condition * * *." (Ill.Rev. Stat.1989, ch. 85, par. 3-102(a).)
Section 3-106 states that defendant is not liable for an injury "where the liability is based on the existence of a condition of any public property * * * to be used for recreational purposes, * * * unless [defendant] is guilty of willful and wanton conduct proximately causing such injury." Ill.Rev.Stat. 1989, ch. 85, par. 3-106.
These two statutory sections obviously apply to a municipality's failure to safely maintain property under its control. Plaintiff, however, pleaded no facts which indicate that defendant did not maintain the swimming pool in a reasonably safe condition. Because we only concede well-pleaded facts when reviewing a decision regarding a motion to strike or dismiss (see Curtis, 114 Ill.App.3d at 129, 69 Ill.Dec. 873, 448 N.E.2d 591) and plaintiff's complaint failed to mention an unsafe condition in or around the pool, section 3-102's exception to the general rule of municipal tort immunitywhen a municipality has actual or constructive notice of an unsafe condition of its propertydoes not apply in the present case. Therefore, plaintiff's complaint does not state a cause of action under section 3-102.
Section 3-106 is similar to section 3-102. Section 3-106 applies to situations where an unsafe condition exists on municipally controlled property intended for recreational use. Unlike section 3-102, however, section 3-106 contemplates liability only if the municipality or municipal employee acts in a "willful and wanton" manner. (Ill.Rev.Stat.1989, ch. 85, par. 3-106.) Count I of plaintiff's complaint alleged that the swimming instructor "negligently and in ignorance and disregard for the safety and health of the plaintiff, knowing plaintiff was a non-swimmer, instructed plaintiff to `jump'" into the pool. Count II simply states that the instructor had "carelessly and negligently told plaintiff to `jump.'" We find that these allegations failed to allege any facts which support a cause of action based on willful and wanton conduct.
*661 This case is similar to Jarvis v. Herrin City Park District (1972), 6 Ill.App.3d 516, 285 N.E.2d 564. The Jarvis plaintiff, a minor, filed a complaint for injuries sustained while playing on a slide in a park operated by a municipality. (6 Ill.App.3d at 518, 285 N.E.2d 564.) The minor's complaint charged that the municipality "`showed an utter indifference to or conscious disregard for the safety of the plaintiff'" when it failed to properly maintain, inspect, and repair the slide. (6 Ill.App.3d at 524, 285 N.E.2d 564.) The Jarvis plaintiff maintained that the municipality's omissions showed a willful and wanton disregard for her safety. The court analyzed the minor's complaint under section 3-106 of the Act (6 Ill.App.3d at 520-25, 285 N.E.2d 564) and held that there were no allegations of fact in the complaint which, if proven, would show that the municipality was "utterly indifferent to or consciously disregarded the safety of the plaintiff." (6 Ill.App.3d at 525, 285 N.E.2d 564.) Thus, the court held that, in light of section 3-106's requirement of willful and wanton behavior, the trial court's dismissal of the complaint was proper. 6 Ill.App.3d at 520, 285 N.E.2d 564.
The complaint in the case at bar similarly fails to state a cause of action. There are no factual allegations in either count I or count II of the complaint to show that defendant had any actual intent to injure plaintiff, was guilty of willful or wanton conduct, or exhibited a conscious disregard of the rights of others. (Jarvis, 6 Ill. App.3d at 524-25, 285 N.E.2d 564.) For example, the complaint contained no facts which indicate there are any dangers associated with jumping feet-first into the shallow end of a swimming pool. No facts were alleged to indicate that the swimming instructor was aware of or disregarded any danger. Instead, plaintiff merely pleaded that he was injured after jumping into the pool when the instructor said to "jump." As in Jarvis, these facts are insufficient to support a claim of willful and wanton conduct. Therefore, plaintiff's complaint does not state a cause of action under section 3-106.
The remaining two sections of the Act which are arguably applicable to plaintiff's case deal specifically with the operation of swimming pools. Section 3-108(b) states that where a municipality designates property for swimming purposes and selects and posts the hours for such purposes, the municipality is liable only for injuries that occur when no supervision is provided during the posted hours for swimming. (Ill.Rev.Stat.1989, ch. 85, par. 3-108(b).) The facts pleaded in plaintiff's complaint indicate that the swimming activity plaintiff participated in was supervised. Therefore, plaintiff's complaint does not state a cause of action under section 3-108.
Section 3-109 is the only section of the Act that plaintiff cited as applicable to his case in his arguments before this court. Section 3-109 applies to "hazardous recreational activity," which is defined as "a recreational activity conducted on [municipal property] which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator." (Ill.Rev.Stat.1989, ch. 85, par. 3-109(b).) "Hazardous recreational activity" also specifically includes "water contact activities * * * in places where or at a time when lifeguards are not provided and reasonable warning thereof has been given." (Ill.Rev.Stat.1989, ch. 85, par. 3-109(b)(1).) "Water contact activities" include swimming, boating, and water skiing. In re Proposed Site Specific Water Pollution Rules and Regulations Applicable to Citizen's Utility Co. of Illinois Discharge to Lily Cache Creek (Ill. PCB July 3, 1990), Op. No. R81-19; In re Joint Petition of the City of Ottawa and the Illinois Environmental Protection Agency for Exceptions to the Combined Sewer Overflow (CSO) Regulations (Ill. PCB Aug. 4, 1988), Op. No. 88-52.
Basically, section 3-109 provides municipal immunity from tort liability for injuries incurred while participating in a hazardous recreational activity. (Ill.Rev.Stat.1989, ch. 85, par. 3-109(a).) Plaintiff argues, however, that section 3-109(c)(1) provides an exception to the immunity provided defendant in section 3-109(a). Section 3-109(c)(1) *662 provides that there is no municipal immunity from tort liability for injuries resulting from hazardous activity if there is a "[f]ailure of the [municipality] to guard or warn of a dangerous condition of which it has actual or constructive notice and of which the participant does not have nor can be reasonably expected to have had notice." (Ill.Rev.Stat.1989, ch. 85, par. 3-109(c)(1).) Plaintiff argues that the "conspicuous disparity between the novice plaintiff and the instructor in knowledge and awareness of the risks [of] the swimming instructor's directive to the plaintiff * * * is precisely the unequal knowledge factor referred to in the statute."
Our analysis of the facts as alleged in plaintiff's complaint in light of the language of section 3-109 leads us to the same conclusion as our analysis of the previous statutory sections. Merely alleging that defendant had superior knowledge or was in a better position to prevent potential harm does not create a duty to warn (see Fryman, 137 Ill.App.3d at 618, 92 Ill.Dec. 178, 484 N.E.2d 909), particularly where the complaint contained no allegation of a "dangerous condition," as required in section 3-109(c)(1). The only danger plaintiff effectively alleged was his own inexperience as a swimmer, which is something "of which the participant * * * can be reasonably expected to have had notice." (Ill. Rev.Stat.1989, ch. 85, par. 3-109(c)(1).) More importantly, the complaint failed to allege sufficient facts which establish that defendant failed to guard or warn of any dangerous conditions of which it had actual or constructive notice of and of which plaintiff did not nor could have reasonably expected to have had notice. If the instructor knew or should have known that plaintiff's jumping into the water was likely to cause the injuries plaintiff allegedly suffered, there is no indication in the complaint to indicate that plaintiff did not nor could not have reasonably expected to know of the same danger himself. Therefore, plaintiff's complaint does not state a cause of action under section 3-109.
We also must note that the activity which led to plaintiff's injuries does not even qualify as a "hazardous recreational activity" under section 3-109. Section 3-109(b)(1) defines "[w]ater contact activities" as those which occur "where or at a time when lifeguards are not provided" or where no warning as to the absence of lifeguards has been given. (Ill.Rev.Stat. 1989, ch. 85, par. 3-109(b)(1).) Plaintiff's complaint contains no facts relating to the presence of a lifeguard, the lack thereof, or the lack of warning that no lifeguard was present. Indeed, the presence of the swim instructor effectively meant that a lifeguard was present at the time of plaintiff's injury. Thus, the adult swimming class is not the type of water contact activity contemplated by section 3-109(b)(1). Further, plaintiff failed to plead any facts that showed how his "jumping" into the pool created a "substantial (as distinguished from a minor, trivial, or insignificant) risk of injury" as defined in section 3-109(b) (Ill.Rev.Stat.1989, ch. 85, par. 3-109(b)). Again, plaintiff's factual allegations are insufficient. However, because section 3-109(a) states that municipalities are not liable for injuries incurred while participating in water contact activities, we fail to see the merit in plaintiff's claim that the swimming class he was injured in was a water contact activity. Therefore, plaintiff's arguments which attempt to apply this section of the Act to the case at bar are illogical.
For the foregoing reasons, we hold that plaintiff's complaint failed to state a cause of action against defendant under the Tort Immunity Act, and that the trial court was correct in granting defendant's motion to dismiss.

II
In the alternative, plaintiff argues that the factual allegations of his complaint effectively state a cause of action under the special duty exception to the Tort Immunity Act. He maintains that his complaint clearly alleges that he was a "beginner adult swimmer" and that defendant purportedly supplied a "qualified" swimming instructor. He argues that such a "qualified instructor" knew or should have *663 known that "directing a beginner (non-swimmer) to jump into the shallow end of a concrete swimming pool could result in any number of spinal and/or other injuries which the plaintiff would have no reason to be familiar with." Plaintiff argues that this satisfies the first part of the special relationship test, which requires the municipality to be "uniquely aware" of the particular danger or risk to which a plaintiff is exposed.
As to the second part of the test, plaintiff asserts that he did allege specific acts or omissions by defendant. Plaintiff states his complaint showed that he was told to jump into the pool by the swimming instructor. He compares the case at bar with the Anthony case, where a fireman instructed a bystander to accompany him into a burning building. The Anthony court held that such an allegation satisfied the second part of the special relationship test. Anthony, 168 Ill.App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22.
As to the third part of the test, which requires that the specific act in question be affirmative or willful in nature, plaintiff again directs us to the swimming instructor's command to "jump." Plaintiff also finds Anthony dispositive on this point, because the Anthony court found that a firefighter's instructing and encouraging a bystander to accompany him into a burning building was sufficiently affirmative to satisfy the third part of the special relationship test. Anthony, 168 Ill.App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22.
Plaintiff argues that the first appellate court case to affirmatively state the four-part special relationship test based its phrasing of the fourth prong on a questionable reading of a prior case. (Bell v. Village of Midlothian (1980), 90 Ill.App.3d 967, 970, 46 Ill.Dec. 382, 414 N.E.2d 104, citing Brooks v. Lundeen (1977), 49 Ill. App.3d 1, 7 Ill.Dec. 262, 364 N.E.2d 423.) Plaintiff argues that Bell's popularly accepted fourth part of the test, which requires that the injury occur while the plaintiff is under the immediate and direct control of an employee or agent of the municipality, does not appear in the Brooks case. Thus, plaintiff urges that we disregard the fourth part of the test as a misstatement of the law, or rephrase it to express better the scope of relationships which justify imposing a special duty on a municipality. In particular, plaintiff suggests we adopt the language of the Brooks opinion, which would seemingly find a special relationship based on traditional concepts of duty and foreseeability in negligence law. See Brooks, 49 Ill.App.3d at 6-7, 7 Ill.Dec. 262, 364 N.E.2d 423.
As to the matter of whether plaintiff's complaint must satisfy the fourth part of the special relationship test as articulated in Bell, we note that past efforts to discard the "control" requirement from the special duty analysis have been rejected by the appellate court. For example, in Schaffrath v. Village of Buffalo Grove (1987), 160 Ill.App.3d 999, 112 Ill.Dec. 417, 513 N.E.2d 1026, the plaintiffs were injured in an accident caused by a drunken driver. Half an hour earlier, one of the municipality's police officers had stopped the driver because of a vehicular violation unrelated to drunken driving. The Schaffrath plaintiffs alleged that defendant's police officer should have noticed the driver's drunken condition. (Schaffrath, 160 Ill.App.3d at 1001-02, 112 Ill.Dec. 417, 513 N.E.2d 1026.) The Schaffrath court determined that the municipality could be liable in this situation only if a special relationship existed between the police officer and the plaintiffs. 160 Ill.App.3d at 1003, 112 Ill.Dec. 417, 513 N.E.2d 1026.
The appellate court affirmed the dismissal of the Schaffrath plaintiffs' complaint because it failed to allege facts which showed that the plaintiffs had been under the officer's control at the time of the accident. (160 Ill.App.3d at 1003, 112 Ill. Dec. 417, 513 N.E.2d 1026.) The plaintiffs in that case urged the appellate court to discard the fourth part of the special relationship test on several grounds, most notably that the public policy against drunken driving should create a duty in this situation because the accident was foreseeable. The court rejected this proposal on the grounds that municipal tort immunity also *664 is based on sound public policy, including the concept that police department negligence is not the actual or proximate cause of harm committed by others. To abrogate this latter policy would put the police in the position of guaranteeing the safety of every person in the community. (160 Ill. App.3d at 1004-06, 112 Ill.Dec. 417, 513 N.E.2d 1026.) Therefore, Schaffrath refused to discard or modify the "control" requirement of the special relationship test.
Other appellate court decisions have similarly refused to eliminate the fourth part of the test, or have refused to abrogate the public-duty/private-duty dichotomy. (See Poliny v. Soto (1988), 178 Ill.App.3d 203, 209-10; 127 Ill.Dec. 397, 533 N.E.2d 15; Fessler v. R.E.J. Inc. (1987), 161 Ill.App.3d 290, 296-98, 112 Ill.Dec. 852, 514 N.E.2d 515; Luber v. City of Highland (1986), 151 Ill.App.3d 758, 762-63, 104 Ill.Dec. 583, 502 N.E.2d 1243.) Specifically, the Fessler court also addressed the alleged ambiguity in Brooks and held that the factual setting of Brooks (where the police directed decedent to use his automobile as part of roadblock) was an example of the kind of direct control the fourth part of the test generally has been held to contemplate. Fessler, 161 Ill.App.3d at 297, 112 Ill.Dec. 852, 514 N.E.2d 515.
We further recognize that numerous appellate court decisions have embraced all four parts of the test with regularity (Fessler, 161 Ill.App.3d at 297, 112 Ill.Dec. 852, 514 N.E.2d 515 (and cases cited therein)), and that a plethora of appellate opinions has decided, exclusively by reference to the fourth part of the test, whether a special relationship exists (Trepachko v. Village of Westhaven (1989), 184 Ill.App.3d 241, 248, 132 Ill.Dec. 602, 540 N.E.2d 342; Poliny, 178 Ill.App.3d at 207, 127 Ill.Dec. 397, 533 N.E.2d 15; Vasconcelles v. City of Springfield (1988), 170 Ill.App.3d 404, 408, 120 Ill.Dec. 690, 524 N.E.2d 720; Kavanaugh v. Midwest Club, Inc. (1987), 164 Ill.App.3d 213, 222-23, 115 Ill.Dec. 245, 517 N.E.2d 656; Fessler, 161 Ill.App.3d at 296, 112 Ill.Dec. 852, 514 N.E.2d 515; Jackson v. Chicago Firefighters Union, Local No. 2 (1987), 160 Ill.App.3d 975, 981-82, 112 Ill. Dec. 393, 513 N.E.2d 1002; Luber, 151 Ill.App.3d at 762, 104 Ill.Dec. 583, 502 N.E.2d 1243; Hernandez v. Village of Cicero (1986), 151 Ill.App.3d 170, 175, 104 Ill.Dec. 566, 502 N.E.2d 1226; Mallder v. Rasmussen (1986), 145 Ill.App.3d 809, 812, 99 Ill.Dec. 621, 495 N.E.2d 1356; Marshall v. Ellison (1985), 132 Ill.App.3d 732, 737, 87 Ill.Dec. 704, 477 N.E.2d 830; Galuszynski v. City of Chicago (1985), 131 Ill.App.3d 505, 508, 86 Ill.Dec. 581, 475 N.E.2d 960; Long v. Soderquist (1984), 126 Ill.App.3d 1059, 1064-65, 82 Ill.Dec. 80, 467 N.E.2d 1153; Marvin v. Chicago Transit Authority (1983), 113 Ill.App.3d 172, 176-77, 68 Ill.Dec. 786, 446 N.E.2d 1183; Curtis v. County of Cook (1982), 109 Ill.App.3d 400, 407, 65 Ill.Dec. 87, 440 N.E.2d 942). The combination of this great weight of precedent and the constitutional provision which expressly grants the General Assembly control over municipal immunity convinces us that the legislature is the appropriate body to alter any existing exception to municipal tort immunity as contained in the Tort Immunity Act. We therefore will analyze plaintiff's complaint using all four parts of the Bell special relationship test.
Defendant argues that the special relationship doctrine is inapplicable to the case at bar. Defendant claims that the special duty exception to the Tort Immunity Act has never been applied outside the realm of law enforcement or fire protection. While it is true that no Illinois court has recognized a special duty except in instances of police or fire department negligence (see Anthony, 168 Ill.App.3d at 736-37, 119 Ill. Dec. 554, 523 N.E.2d 22; Gardner v. Village of Chicago Ridge (1966), 71 Ill.App.2d 373, 379, 219 N.E.2d 147), courts have analyzed other types of tort actions to determine if a municipality is liable because a special duty or relationship existed (see Stigler v. City of Chicago (1971), 48 Ill.2d 20, 24-25, 268 N.E.2d 26 (no special duty for failure to enforce housing code; ordinance's enforcement was governmental, not proprietary, act); Arizzi, 201 Ill.App.3d at 372, 147 Ill.Dec. 68, 559 N.E.2d 68 (no special duty for failure to enforce municipal code; no allegation of awareness of danger, same as part 1 of test); Ramos, *665 137 Ill.App.3d at 1034, 92 Ill.Dec. 607, 485 N.E.2d 418 (no special duty to plaintiff in recreational program because municipality operated in its governmental rather than a proprietary capacity); Fryman, 137 Ill. App.3d at 617, 92 Ill.Dec. 178, 484 N.E.2d 909 (no special duty for failure to enforce health ordinance; no allegation for unique awareness of danger, test part 1); Swaw v. Ortell (1984), 137 Ill.App.3d 60, 67-68, 92 Ill.Dec. 49, 484 N.E.2d 780 (village acted in governmental capacity when enforcing building codes, thus no special duty); Lakeside, 135 Ill.App.3d at 974-75, 90 Ill.Dec. 686, 482 N.E.2d 665 (unclear application of special relationship test to village's negligent enforcing of building code; complaint apparently failed part 1 for not alleging knowledge of a dangerous condition); Bell, 90 Ill.App.3d at 970, 46 Ill.Dec. 382, 414 N.E.2d 104 (village charged with failure to maintain minibike trails; complaint failed parts 1, 3, and 4)). However, because our analysis reveals that plaintiff's complaint fails to state a cause of action under Bell`s four-part test, the question of actually expanding special duty liability beyond police department and fire protection cases is immaterial.
We agree that plaintiff probably pleaded enough facts to satisfy parts 2 and 3 of the test. However, we determine that plaintiff's complaint failed to contain sufficient averments of fact under parts 1 and 4 of the test to state a cause of action. See Stenwall, 398 Ill. at 383, 75 N.E.2d 864.
Plaintiff's complaint is devoid of any factual allegations that defendant was aware of any particular danger or risk to which plaintiff was exposed. The complaint fails to allege a dangerous condition or how jumping into the shallow end of the pool feet-first created such a condition. The complaint merely states that the swimming instructor, because of his superior knowledge and experience, knew or should have known that instructing a novice swimmer to jump into the shallow end of a pool was dangerous. Superior knowledge, in and of itself, does not create a duty. The plaintiff is impliedly seeking to fashion an exception to municipal immunity based only upon the fact that defendant (in the person of the swimming instructor) is in a better position than the participants in the swimming class (the general public) to prevent potential harm.
Such a rule has no basis in precedent. The notion that defendant, through the possession of superior knowledge, has a duty to a specific individual "would effectively eviscerate" the common law rule that public officials owe a duty to the general public only. (Fryman, 137 Ill.App.3d at 618, 92 Ill.Dec. 178, 484 N.E.2d 909.) Such a rule would force any municipality which employs someone who possesses superior knowledge or experience to be liable for injuries arising from any instruction or direction related to the employee's expertise. Recognizing such a duty owed by municipal employees to individuals based solely on the employees' knowledge, background, or training, in the absence of special circumstances, would, for example, place every trained recreational supervisor in the position of guaranteeing the personal safety of every person participating. This not only would run against the grain of the common law, but is clearly prohibited by the Tort Immunity Act. Ill.Rev.Stat.1989, ch. 85, pars. 3-106, 3-108, 3-109.
Common sense also prevents us, without some factual allegation as to how or why plaintiff's jumping into the pool was inherently dangerous, from seeing how such a danger even existed in the case at bar. In Lane v. City of Harvey (1988), 178 Ill.App.3d 270, 127 Ill.Dec. 457, 533 N.E.2d 75, the plaintiff had been injured while directing traffic outside an industrial plant. The plaintiff maintained that the city owed him a special duty because traffic controllers were under the authority of the police department, which thus had a duty to train and supervise him. However, the appellate court held that the Lane plaintiff had failed to satisfy the first part of the test because the trial court had found no evidence that the city was uniquely aware of any particular danger to which the plaintiff was exposed as a traffic controller. The court determined that private citizens often participate in traffic control *666 on a daily basis without exposure to any particular danger. (Lane, 178 Ill.App.3d at 276-77, 127 Ill.Dec. 457, 533 N.E.2d 75.) The situation is the same in the case at bar. People are enjoying the use of municipal swimming pools all over the State on a daily basis, and are probably jumping into the pools when they do so, without being exposed to any particular danger which the operators of the pool are uniquely aware of. Without clearly articulated factual allegations, we cannot assume otherwise.
Plaintiff's complaint is wholly unlike the complaint in Anthony, which satisfied the first part of the test. The Anthony plaintiff was a layman who was instructed by firemen to remain in a burning building to assist them. The plaintiff was burned when a fireman directed him to stand in front of an elevator door. (Anthony, 168 Ill.App.3d at 735, 119 Ill.Dec. 554, 523 N.E.2d 22.) The Anthony complaint alleged that the defendant firefighters were experienced in combating blazes and, specifically, had experience and knowledge regarding the dangerous conditions and effects of updrafts in elevator shafts. It further alleged that these conditions often resulted in explosions when the elevator door is opened. The complaint also stated that the fireman failed to warn plaintiff of these dangers, or to provide him with protective clothing. 168 Ill.App.3d at 735, 737, 119 Ill.Dec. 554, 523 N.E.2d 22.
Unlike the complaint in the case at bar, the Anthony complaint was supported by factual allegations. The complaint alleged several dangerous conditionsupdrafts in the elevator shaft, the burning building generally, and the plaintiff's lack of protective clothing. The complaint specifically alleged the firemen's actual awareness of these particular dangers. The complaint in the case at bar, however, fails to allege any known danger. Simply alleging plaintiff's lack of experience fails to indicate why the pool is dangerous. Is the water in the pool inherently dangerous because of the possibility of drowning? Is the water too shallow for an adult male to be jumping into? Is the material that makes up the pool bottom too rigid to properly cushion an adult male's jump into shallow water? Because we are dealing with an appeal from a motion to dismiss, we can assume little. Plaintiff has adequately alleged his injuries, but fails to allege facts that establish a dangerous condition which caused those injuries. Therefore, we conclude that plaintiff's complaint failed to allege that defendant was "uniquely aware of the particular danger or risk" involved in plaintiff's leap into the shallow end of the pool. See McGuckin v. Chicago Union Station (1989), 191 Ill.App.3d 982, 992, 139 Ill.Dec. 76, 548 N.E.2d 461 (failure to prove part 1 of test where fireman was unaware of particular danger to decedent present on premises during fire); Goebig v. City of Chicago (1989), 188 Ill.App.3d 614, 617, 136 Ill. Dec. 339, 544 N.E.2d 1114 (city was not uniquely aware of any particular danger to decedent at intersection crosswalk); Rush v. City of Chicago (1987), 163 Ill.App.3d 725, 728, 115 Ill.Dec. 52, 517 N.E.2d 17 (police were not uniquely aware of danger to custodial rape suspect from mother of victim; no special duty); Tannenbaum v. Lincoln National Bank (1986), 143 Ill. App.3d 572, 577, 97 Ill.Dec. 661, 493 N.E.2d 143 (complaint failed special duty test because police had no knowledge repossession of auto would be executed so as to constitute breach of peace); Gillan v. Hanna (1972), 6 Ill.App.3d 18, 19, 284 N.E.2d 448 (policeman unaware that child, who was injured because of car chase, was playing near scene of arrest; no special duty).
Plaintiff also failed to allege any facts to support a claim that he was injured while under the direct and immediate control of defendant. Plaintiff argues that the actions of the swimming instructor placed him in a position of peril which resulted in plaintiff's injuries. He further contends that the instructor undertook responsibility for plaintiff's safety when he induced plaintiff to place his trust in the instructor's purported knowledge and skill.
This argument fails. The swimming instructor may have occupied a position of responsibility, but that does not necessarily equal "direct and immediate control," as required under the Bell test. The situations which have satisfied the fourth part *667 of the test have all involved police or fire protection. (See, e.g., Anthony, 168 Ill. App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22; Gardner, 71 Ill.App.2d at 379, 219 N.E.2d 147; Brooks, 49 Ill.App.3d at 6-7, 7 Ill.Dec. 262, 364 N.E.2d 423.) Police and fire departments are paramilitary organizations. The very essence of their duties is to be cloaked in State authority, making refusal to obey an order or suggestion a difficult proposition in the mind of a private citizen. There is a tremendous qualitative difference between following a police officer's command and following a municipal recreational program instructor's command.
With this in mind, we note that the appellate court has stated that the fourth test requirement is met where the public employee creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee that is not normally provided. (Anthony, 168 Ill. App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22; Jackson, 160 Ill.App.3d at 982, 112 Ill.Dec. 393, 513 N.E.2d 1002.) We interpret this to mean that the control element arises when the public employee initiates the circumstances which create the dangerous situation. Thus, where a police officer or firefighter initiates the dangerous situation without any suggestion from the plaintiff, it has been held that the plaintiff to be under the control of the police or fire department. (Anthony, 168 Ill.App.3d at 737, 119 Ill.Dec. 554, 523 N.E.2d 22; Brooks, 49 Ill.App.3d at 6-7, 7 Ill.Dec. 262, 364 N.E.2d 423; Gardner, 71 Ill.App.2d at 379, 219 N.E.2d 147.) However, where the plaintiff initiates the contact with the municipal employee, it has been held that the plaintiff is not under the direct or immediate control of the municipality. See Jackson, 160 Ill.App.3d at 982, 112 Ill.Dec. 393, 513 N.E.2d 1002 (firefighters not responsible for fire that destroyed home; no direct and immediate control); Galuszynski, 131 Ill.App.3d at 508, 86 Ill.Dec. 581, 475 N.E.2d 960 (no direct or immediate control over individuals found to arise from tardy response to 911 emergency call); Marvin, 113 Ill.App.3d at 177, 68 Ill.Dec. 786, 446 N.E.2d 1183 (no control found when police officer refused to accompany plaintiff to subway and plaintiff was later beaten by thugs).
Thus, it has been held that a person is under the direct and immediate control of a municipality if a municipal employee who is acting with official authority which private citizens would reasonably believe they cannot refuse (such as a police officer's authority) makes a request of the private citizen and the citizen complies with the request. Where a private citizen asks the municipal employee to perform a task, and the employee performs the task so as to injure the citizen, the citizen cannot claim he was under the municipality's direct or immediate control. "`The [municipality] must protect those it throws into snake pits, but [it] need not guarantee that volunteer snake charmers will not be bitten.'" Henderson v. Bradford (1988), 168 Ill.App.3d 777, 781, 119 Ill.Dec. 596, 523 N.E.2d 64, quoting Walker v. Rowe (7th Cir.1986), 791 F.2d 507, 511.
The case at bar is more akin to the second example. Plaintiff voluntarily joined the swimming class. He was not forced to jump into the pool, nor was he ordered or instructed to jump by a person whom he could have reasonably believed he must obey. The factual allegations in the complaint only show us that plaintiff had asked the municipality to teach him to swim, albeit after the payment of a fee. This situation is more comparable to the Galuszynski and Marvin situations, where persons asked the police for aid, than to Anthony or Gardner. The parallel is, of course, not perfect, because defendant had affirmatively announced that it stood ready to teach swimming classes for a $10 fee, much as it might have announced the availability of a police force; but in any particular case, such as plaintiff's, it was at plaintiff's initiative that the fee was offered. Defendant did not go asking for it. Therefore, plaintiff initiated the contract, even though the resulting contract was a mutual one. The fact that plaintiff's injuries occurred during the course of defendant's fulfilling plaintiff's request to teach him to *668 swim does not mean that plaintiff was under the instructor's direct or immediate control. Therefore, we conclude that plaintiff has failed to allege a cause of action under part 4 of the special relationship test.
For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.
Appellate court reversed; circuit court affirmed.
Justice MILLER, specially concurring:
Although I concur in the result reached by the court in the present case, I do not entirely agree with the majority's analysis, and for that reason I write separately.
In Huey v. Town of Cicero (1968), 41 Ill.2d 361, 363, 243 N.E.2d 214, the court cited the general rule, which exists "[i]ndependent[ly] of statutory or common-law concepts of sovereign immunity," that "a municipality or its employees is not liable for failure to supply general police or fire protection." Huey further noted that the only exceptions to the rule of nonliability have been found in cases in which public officers or their agents owed a special duty of care to a particular person. Apart from the implication that the special duty doctrine has an independent source in the law, the Huey court did not further elaborate on the relationship between that doctrine and principles of statutory or common law tort immunity.
In the present appeal, the court rejects the plaintiff's contention that the agents of the Village of Glendale Heights owed him a special duty. Although the court suggests that the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev.Stat.1989, ch. 85, pars. 1-101 through 9-107) alone governs the case at bar (139 Ill.2d at 510-11, ___ Ill.Dec. at ___, 565 N.E.2d at 660), the majority opinion ultimately leaves that question unresolved. In disposing of the plaintiff's contention that he is the beneficiary of a special duty, the majority eventually turns to the four-part test that the appellate court formulated in Bell v. Village of Midlothian (1980), 90 Ill.App.3d 967, 970, 46 Ill.Dec. 382, 414 N.E.2d 104, and that the appellate court has followed in numerous subsequent decisions. It is not entirely clear from the majority opinion, however, whether this court is now adopting the Bell test as its own, or whether the court is instead merely applying Bell for the sake of analysis.
The plaintiff contends that the Bell test does not accurately define the circumstances that will give rise to a special duty and thus sustain a tort action against an otherwise immune agent or unit of local government. The plaintiff believes that the fourth element of the testoccurrence of the injury "while the plaintiff is under the direct and immediate control of employees or agents of the municipality" (Bell, 90 Ill.App.3d at 970, 46 Ill.Dec. 382, 414 N.E.2d 104)should not be required. For its part, the village contends that the special duty exception may arise only in instances involving fire or police protection and that the doctrine simply does not extend to other activities.
We need not determine in the present case the precise contours of the special duty exception, for the immunity granted by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev.Stat.1989, ch. 85, pars. 1-101 through 9-107) provides a sufficient answer to the plaintiff's claim. As the majority opinion demonstrates, the Act speaks to municipal liability for water activities, among other things, and the relevant provisions clearly confer immunity in the circumstances alleged in the instant appeal. Accordingly, I would leave to future cases the tasks of defining the special duty doctrine and the relationship between it and the Tort Immunity Act, and would not undertake an analysis of those issues here, where the question presented is resolved by statute.